AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

United States Courts
Southern District of Texas
FILED

*March 15, 2017*

David J. Bradley, Clerk of Court

United States of America
v.
STEPHEN E. STOCKMAN DOB: ▮

Case No. H17-0331M

Defendant(s)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of January 2013 to October 2013 in the county of Harris and elsewhere in the Southern District of Texas, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. Section 371, Title 52 U.S.C. Sections 30122 and 30109 (d)(1)(D), and Title 18 U.S.C. Section 1001(a)(2) | Conspiracy to Make Conduit Contributions and False Statements |

This criminal complaint is based on these facts:

See attached "Affidavit"

☑ Continued on the attached sheet.

_____
Complainant's signature

Vanessa Walther, FBI Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 03/15/2017

_____
Judge's signature

City and state: Houston, Texas

Stephen Wm. Smith, U.S. Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN E. STOCKMAN,<br><br>          Defendant. | Magistrate No. __H17-0331M__<br><br>**UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Special Agent Vanessa Walther, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of a criminal complaint charging Stephen E. Stockman ("STOCKMAN") with conspiracy, in violation of Title 18, United States Code, Section 371. As set forth herein, it was the object of the conspiracy to knowingly and willfully make contributions to a candidate for federal office in the names of other persons, aggregating to more than $10,000 in a calendar year, in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(D), and to knowingly and willfully make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Federal Election Commission ("FEC"), a department or agency of the United States government, in violation of Title 18, United States Code, Section 1001(a)(2). This affidavit is also submitted in support of an arrest warrant.

### AGENT BACKGROUND

2. I am a Special Agent with the Federal Bureau of Investigation and have been employed as such for approximately 21 years. As an FBI Special Agent, I have conducted

1

numerous investigations of various criminal violations of Federal law. During my tenure as an FBI agent, I have been assigned to investigate various types of criminal violations, including white collar crime, securities and corporate fraud (5 years); violent crime and child sex trafficking (5 years); complex financial fraud (5 years). I am currently assigned to investigate public corruption matters and have been for the past 4 years. During my FBI tenure, I was the Houston Division Associate Division Counsel for 3 years. Prior to my employment with the FBI, I was self-employed for 3 years as an attorney practicing civil litigation. I graduated from the University of Texas with a Doctor of Jurisprudence (JD) degree in 1992.

## SOURCE OF INFORMATION

3. The facts set forth in this affidavit are based upon my personal knowledge, knowledge obtained during my participation in this investigation, and knowledge obtained from other individuals. I have reviewed documents and computer records related to this investigation, communicated with others who have personal knowledge of the events and circumstances described herein, and learned information through my training and experience. This affidavit does not contain all of the information known to me regarding this investigation. I have included in this affidavit facts that I believe are sufficient to support a probable cause finding for the issuance of the requested warrant, but I do not purport to include each and every matter of fact observed or known to me or other law enforcement agents involved in this investigation.

## RELEVANT INDIVIDUALS AND ENTITIES

4. From January 2013 through January 2015, STOCKMAN served as a Member of the United States House of Representatives for the 36th congressional district of the State of Texas. The 36th congressional district extends eastward from Houston and includes portions of Harris County. Stockman's campaign committee, Friends of Congressman Steve Stockman,

2

filed its statement of organization, which is a founding document required of all campaign committees, with the Federal Election Commission ("FEC") in or about April 2012. The campaign maintained bank accounts at Wells Fargo under the names "Stephen E. Stockman, dba Friends of Steve Stockman" and "Stephen E. Stockman, dba Friends of Congressman Stockman" to accept and receive campaign contributions. The accounts were opened by Stockman, and he held signatory authority on the accounts.

5. PERSON A was employed by the U.S. House of Representatives as Director of Special Projects in STOCKMAN's office from on or about January 3, 2013, until on or about October 15, 2013.

6. PERSON B was employed by the U.S. House of Representatives as Special Assistant in STOCKMAN's office from on or about January 3, 2013, until on or about October 15, 2013.

7. Life Without Limits was a non-profit entity incorporated in the State of Nevada in or about April 2011 for the purpose of assisting individuals living through traumatic life events. In or about November 2011, Life Without Limits received tax-exempt status as a charitable organization under Section 501(c)(3) of the Internal Revenue Code. Beginning in or about February 2012, STOCKMAN opened and maintained multiple bank accounts under the name "Stephen E Stockman dba Life Without Limits," notwithstanding that at the time STOCKMAN maintained no formal control of Life Without Limits. Beginning at or around the same time, STOCKMAN solicited charitable donations in the name of Life Without Limits by informing potential donors that their donations to Life Without Limits would be used for charitable and educational purposes. In or about October 2013, STOCKMAN funded the formal transfer of Life Without Limits to individuals associated with STOCKMAN.

3

## THE FEDERAL ELECTION CAMPAIGN ACT

8. The Federal Election Campaign Act of 1971, as amended, 52 U.S.C. § 30101 *et seq.* ("FECA"), is a federal law that regulates financial activity intended to influence the election of candidates running for federal office, including the Senate, House of Representatives, Presidency, and Vice Presidency. FECA requires political committees, including campaign committees and political action committees (PACs), to register with and file periodic campaign finance reports with the FEC that identify (a) each person who, during the reporting period, contributed more than $200 to the committee, together with the date and the amount of any such contribution, and (b) the name and address of individuals to whom the political committees paid more than $200. 52 U.S.C. § 30104. FECA also regulates the amount of the contribution that an individual may make to a candidate running for federal office. 52 U.S.C. §§ 30116(a)(1)(A) (original limit), 30116(c) (inflation provision). In the 2012 election cycle, that dollar limit was $2,500. FECA outlaws knowingly and willfully making or accepting a contribution made by one person in the name of another person. 52 U.S.C. § 30122, 30109(d)(1)(D). This violation is commonly known as making or accepting contributions through straw or conduit contributors.

9. The FEC is an agency of the Executive Branch of the United States Government with jurisdiction over the administration and civil enforcement of FECA. Pursuant to FECA, the FEC compiles and publishes information reported by campaign committees about the source and amounts of campaign contributions and expenditures.

10. In addition to the requirements and prohibitions of FECA outlined above, federal law prohibits a Congressman from soliciting a campaign contribution from a federal employee. 18 U.S.C. § 602(a). Similarly, Section 603(a) prohibits, among other things, an employee from

4

making a campaign contribution to their U.S. Representative employer.

## FACTS SUPPORTING PROBABLE CAUSE

11. STOCKMAN was elected as a U.S. Representative from the 36th congressional district of Texas on or about November 6, 2012. STOCKMAN took office as a U.S. Representative on or about January 3, 2013.

12. On or about January 24, 2013, STOCKMAN and PERSON B met with PERSON C, a wealthy businessman who operated a charitable foundation, at PERSON C's offices near Chicago, Illinois. In the course of this meeting, STOCKMAN and PERSON B solicited a $350,000 charitable contribution from PERSON C, through PERSON C's charitable foundation, to Life Without Limits, for the purpose of renovating a house in Washington, D.C., called the "Freedom House," which would serve as a meeting place and training facility. The same day, PERSON C's charitable foundation issued a check, signed by PERSON C, in the amount of $350,000. The check was made payable to Life Without Limits and the memo line of the check stated, "2013 Charitable Contribution."

13. The $350,000 check from PERSON C's charitable foundation was deposited at a bank branch located in Webster, Texas, and credited to one of STOCKMAN's Life Without Limits accounts, account number ending in 2178, on January 30, 2013. Prior to the deposit, the Life Without Limits 2178 account had a balance of $33.48. Beginning shortly after the $350,000 charitable donation was deposited into the Life Without Limits account, rather than spending the money on the "Freedom House," STOCKMAN secretly diverted the funds to pay for a variety of personal expenses and to fund illegal contributions to STOCKMAN's campaigns for public office. Financial records indicate that STOCKMAN made no significant expenditures toward

5

the purchase, renovation, or operation of the "Freedom House," which was never opened.

14. Some of the money PERSON C intended for the "Freedom House" was funneled by STOCKMAN directly into his congressional campaign account through conduit contributors. On February 10, 2013, a check was issued from the Life Without Limits 2178 account to PERSON A for $12,500. On February 11, 2013, the check to PERSON A was credited into his personal account at Bank of America, account number ending in 0954. Prior to this check deposit, PERSON A's 0954 account had a balance of $1,628.06. That same day, PERSON A donated $7,500 to Stockman's congressional campaign. He wrote three checks for $2,500 each—the maximum contribution allowed for a primary, runoff, and general election in 2012—to Friends of Congressman Steve Stockman. All three checks were drawn from PERSON A's 0954 account.

15. Similarly, on February 10, 2013, a check was issued from the Life Without Limits 2178 account to "[PERSON B] & Associates" for $12,000. "[PERSON B] & Associates" was a business operated by PERSON B. On the same day, the check was credited into an account at Wells Fargo titled, "[PERSON B] & Associates LLC," account number ending in 0475. Prior to this deposit, PERSON B's 0475 account had a balance of $1.15. PERSON B transferred $8,000 of the total $12,000 that he received to an account in his name at Wells Fargo, account number ending in 4963. Prior to this $8,000 transfer, PERSON B's 4963 account had a negative account balance of -$0.97. Via checks dated February 11, 2013, PERSON B donated $7,500 to Stockman's congressional campaign. He wrote three checks for $2,500 each—the maximum contribution allowed for a primary, runoff, and general election in 2012—to Friends of Steve Stockman. All three checks were drawn from PERSON B's 4963 account.

16. A review of Stockman's campaign FEC filings reveals no reported campaign

6

contributions from PERSON C or PERSON C's charitable foundation.

17. On March 27, 2013, STOCKMAN's campaign accountant, PERSON D, wrote an email to PERSON A stating, in part, "Did Steve [STOCKMAN] talk to you about recording your donations to [Friends of Congressman Steve Stockman] on [the] FEC report as coming from your dad? Same applies to [PERSON B]; we are trying to disconnect the congressional money from campaign money. If you and [PERSON B] are Ok with this, please email me names and addresses, occupation, and employer for the designated donors you choose." The same day, PERSON A replied, "He has not talked to me, but that is ok with me," and provided the name and address of PERSON A's father.

18. On March 28, 2013, PERSON A sent an email to PERSON B, copying PERSON D. In the body of the email, PERSON A wrote, "[PERSON B], Per our conversation in the car tonight would you please send [PERSON D] your daddy's information for the FEC report." PERSON B responded and provided the name and address of PERSON B's father. PERSON D responded, stating, "Thanks [PERSON B]. What should I put for occupation and employer?" PERSON B wrote back, "Actually, [u]se my mother's information." He then provided the name and address of his mother.

19. On April 15, 2013, STOCKMAN's congressional campaign committee, Friends of Congressman Steve Stockman, filed a report with the FEC for the first quarter of 2013. In that report, the committee reported receiving three contributions of $2,500 each from PERSON B's mother on February 21, 2013. The committee also reported receiving three contributions of $2,500 each from PERSON A's father on February 21, 2013.

20. As noted above, it is a crime for a campaign contribution to be made by one person in the name of another. It is also a crime to make a false statement to the FEC.

7

21. On or about October 16, 2013, following a media report about the above-described contributions, STOCKMAN's campaign committee amended its first-quarter 2013 FEC filing to disclose that the contributions initially attributed to PERSON B's mother and PERSON A's father had actually been made by PERSON B and PERSON A. A memo entry to the amendment falsely asserted that the contributions were reported incorrectly as a result of miscommunication with accountants about joint charitable donations.

22. Two days later, on or about October 18, 2013, another media report concerning the amended FEC report raised the question of whether PERSON B and PERSON A violated the federal criminal prohibition on political contributions by federal employees to their employers, as the contributions were made while both men were employed in STOCKMAN's congressional office.

23. The next day, on or about October 19, 2013, Stockman's campaign committee filed a second amended report with the FEC, stating that the contributions made by PERSON B and PERSON A had been refunded. The amended report stated, in part, "It should be noted, that all aforementioned contributions have been refunded in full as the corrections may have deemed them not permissible." According to PERSON D, in or around late October or early November of 2013, after the FEC reports described above had been filed, STOCKMAN told PERSON D that he gave the money for the contributions to PERSON B and PERSON A. According to PERSON D, all of the FEC reports filed by the STOCKMAN congressional campaign in 2013 were filed electronically from computers located in STOCKMAN's campaign office in Webster, Texas, or PERSON D's office or apartment in Corpus Christi, Texas.

## CONCLUSION

24. Based upon my training and experience, and the information set forth above, there

8

is probable cause to believe that, from in or about January 2013 to at least in or about October 2013, in the Southern District of Texas and elsewhere, STOCKMAN violated Title 18, United States Code, Section 371, by knowingly conspiring and agreeing with others known and unknown to commit the following offenses against the United States: (a) to knowingly and willfully make contributions to a candidate for federal office in the names of other persons, aggregating to more than $10,000 in a calendar year, in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(D); and (b) to knowingly and willfully make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the FEC, a department or agency of the United States government, in violation of Title 18, United States Code, Section 1001(a)(2).

        Respectfully submitted,

        _____
        Vanessa Walther
        Special Agent
        Federal Bureau of Investigation

Subscribed and sworn to before me
on ___15___ March, 2017

_____
UNITED STATES MAGISTRATE JUDGE

9