## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. H-17-116S-03** |
| | § | |
| **JASON T. POSEY** | § | |

### PLEA AGREEMENT

The United States of America, by and through AnnaLou Tirol, Acting Chief

of the Public Integrity Section, United States Department of Justice, Ryan J.

Ellersick and Robert J. Heberle, Trial Attorneys for the Public Integrity Section, Abe

Martinez, Acting United States Attorney for the Southern District of Texas, and

Melissa Annis, Assistant United States Attorney, and the defendant, Jason T. Posey

("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal

Rules of Criminal Procedure, state that they have entered into an agreement, the

terms and conditions of which are as follows:

### Defendant's Agreement

1.    Defendant agrees to plead guilty to Counts 4, 8, and 22 of the First

Superseding Indictment.  Count 4 charges Defendant with mail fraud, in violation

of Title 18, United States Code, Sections 1341 and 2.  Count 8 charges Defendant

1

with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2. Count 22 charges Defendant with money laundering in violation of Title 18, United States Code, Sections 1957 and 2. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Sections 1341 and 1343 is imprisonment of not more than 20 years and a fine of not more than $250,000. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1957 is imprisonment of not more than 10 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years after a conviction under Title 18, United States Code, Sections 1341, 1343, and 1957. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title

2

18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction for a total payment of $300.00. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Cooperation

4. The parties understand this Agreement carries the potential for a motion for departure under § 5K1.1 of the United States Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the Chief of the Public Integrity Section and the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for

3

departure pursuant to § 5K1.1 of the Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraphs 21-25 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

5. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all truthful information relating to any criminal activity known to Defendant, including, but not limited to, mail and wire fraud, violations of the Federal Election Campaign Act, false statements to the Federal Election Commission, and money laundering. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant and the United States agree that, for purposes of determining Defendant's guideline range at the time of sentencing, section 2B1.1 of the United States Sentencing Guidelines is the applicable Chapter Two offense guideline section. Defendant and the United States further agree that the applicable base offense level under section 2B1.1 of the United States Sentencing Guidelines is 7.

(b) Defendant agrees that this Plea Agreement binds only the Public Integrity Section and the United States Attorney's Office for the Southern District of Texas and Defendant, and that it does not bind any other United States Attorney's office or other component or section of the Department of Justice;

4

(c) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this Agreement;

(d) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(e) Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by Defendant to the grand jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(f) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(g) Should any recommended departure not meet Defendant's expectations, Defendant understands he remains bound by the terms of this Agreement and that he cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal and Collateral Review

6. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become

final.    Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255.    In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

7.  In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.    Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court.    The United States does not make any promise or representation concerning what sentence the defendant will receive.    Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court.  *See United States v. Booker*, 543 U.S. 220 (2005).    Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing

6

Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8. Defendant understands and agrees that each and all waivers contained in the Agreement as well as the agreement to cooperate are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

9. The United States agrees to each of the following:

(a) At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines;

(b) If Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines and the Defendant's offense level is 16 or greater, the United States agrees not to oppose Defendant's request for an additional one-level departure based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding his role in the offense.

### Agreement Binding – Public Integrity Section and Southern District of Texas

10. The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the First Superseding Indictment which are known to the United States at the time of the execution of this plea agreement. This plea agreement binds only

the Public Integrity Section and United States Attorney's Office for the Southern

District of Texas and Defendant. It does not bind any other United States

Attorney's office or other component or section of the Department of Justice. The

Public Integrity Section and United States Attorney's Office for the Southern

District of Texas will bring this plea agreement and the full extent of Defendant's

cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under

guidelines sentencing. Specifically, the United States reserves the right:

    (a)    to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

    (b)    to set forth or dispute specific offense characteristics or adjustments under the Sentencing Guidelines, sentencing factors, or facts material to sentencing;

    (c)    to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

    (d)    to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

    (e)    to appeal the sentence imposed or the manner in which it was determined.

8

## Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offenses to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

13. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

9

(a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree;

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts 4, 8, and 22 of the First Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offenses beyond a reasonable doubt. Defendant agrees that the following statement of facts fairly and accurately describes Defendant's actions and involvement in the offenses to which he is pleading guilty. Defendant knowingly, voluntarily, and truthfully admits the facts set forth in this Plea Agreement.

In or around January 2013, co-defendant Stephen E. Stockman was sworn into office as a Member of the United States House of Representatives for Texas's 36th Congressional District. From in or around January 2013 until in or around November 2013, Defendant served as treasurer of Stockman's congressional campaign committee, Friends of Congressman Steve Stockman. Additionally, from in or around January 2013 until in or around November 2013, Defendant was employed in Stockman's congressional office as director of special projects.

In or around January 2013, Stockman and co-defendant Thomas Dodd told Defendant that they had solicited and received a $350,000 charitable contribution from a donor in Chicago, who Defendant subsequently learned was Person B. Defendant understood that Stockman and Dodd told Person B that the charitable contribution would be used to fund the "Freedom House," a townhouse in Washington, D.C., that would serve as a meeting place, dormitory, and training facility for young people.

In or around February 2013, Stockman directed Defendant and Dodd to funnel $15,000 of the $350,000 Freedom House charitable contribution into a bank account for Stockman's congressional campaign. Stockman provided Defendant with the checkbook for the account "Stephen E. Stockman dba Life Without Limits" and directed Defendant to write himself a check for $12,500 and Dodd a check for

$12,000. Stockman further directed Defendant and Dodd to use the funds to each write the Stockman campaign three $2,500 checks, for a total contribution of $7,500 each, which was the maximum allowable individual contribution under federal law at the time.

On or about February 10, 2013, at Stockman's direction, Defendant wrote himself a check for $12,500 and "Dodd & Associates" a check for $12,000 on the "Stephen E. Stockman dba Life Without Limits" account. Defendant and Dodd then deposited the checks into their respective personal bank accounts. As Stockman had directed, on or about February 11, 2013, Defendant wrote three $2,500 checks from his personal account to Stockman's campaign, and Dodd wrote three $2,500 checks from his personal account to Stockman's campaign. Pursuant to Stockman's instructions, Defendant deposited these contribution checks into Stockman's campaign bank account. Stockman, Defendant, and Dodd were aware at the time that their actions were in violation of federal election laws.

To conceal the fact that they had funneled a portion of the Freedom House charitable donation into Stockman's congressional campaign account, Stockman, Defendant, and Dodd agreed to falsely report to the FEC that these contributions were made by Defendant's father and Dodd's mother. On or about April 15, 2013, Defendant and his co-defendants caused the submission of a report to the FEC that

12

falsely stated that Defendant's father and Dodd's mother each made $7,500 in contributions. On or about October 16, 2013, Defendant and his co-defendants caused the submission of an amended report to the FEC that falsely stated that Defendant and Dodd made the contributions that were initially attributed to their parents. This false report was submitted via interstate wire transmission from the Southern District of Texas to Washington, D.C.

Count 8 — On or about May 13, 2014, Defendant, at Stockman's direction, knowingly transmitted an email via interstate wire transmission to Person B's accountant attaching a letter concerning Person B's $350,000 charitable donation to Life Without Limits. The attached letter contained Defendant's name in the signature block and stated, in part: "With your financial assistance of $350,000 in February 2013, allowed [*sic*] Life Without Limits, to deliver medical supplies to third world nations and support Freedom House." This statement by Defendant was knowingly false. As Defendant was then aware, no significant portion of the $350,000 charitable donation by Person B was used by Life Without Limits to support the Freedom House.

Count 4 — In or around late 2013, Stockman began making preparations to seek a political party's nomination for election as a United States Senator from the State of Texas. Stockman's principal strategy for reaching voters was a mass-

mailing project involving the distribution of a publication resembling a newspaper that advocated for Stockman and against Stockman's opponent in the upcoming Senate primary election. Knowing that individual contributions to Stockman's Senate campaign committee were limited under federal election laws to $2,600 per election, Stockman and Defendant sought to circumvent those limits by soliciting funds in excess of that amount through fraudulent representations. In order to raise money for the mass mailing of the "newspapers" to Texas voters, Stockman and Defendant developed a plan to solicit funds, purportedly to finance an "independent expenditure" by Center for the American Future, an organization created by Defendant.

In reality, as Stockman and Defendant were well aware at the time, Center for the American Future's activities were never intended to be independent of Stockman or his campaign. On or about February 18, 2014, relying on knowingly false representations by Stockman and Defendant that Center for the American Future's activities would be genuinely independent of Stockman and his campaign, a donor issued a check for $450,571.65 to fund the purported independent expenditure. Stockman and Defendant caused this check to be sent by a private and commercial interstate carrier from a location outside the State of Texas to an address affiliated with a direct-mail company in the Southern District of Texas.

14

Beginning in or around February 2014, and contrary to the representations made to the donor, Stockman, along with Defendant, personally supervised and directed the printing and mailing of hundreds of thousands of the pro-Stockman "newspapers" to Texas voters. Stockman and Defendant knowingly and willfully used funds from Person B's previous $350,000 charitable donation for the Freedom House, as well as funds from the $450,571.65 donation for Center for the American Future's purported independent expenditure, to fund the printing and mailing of the pro-Stockman "newspapers." In addition, Stockman and Defendant knew at the time that their coordinated use of these funds to print and mail the pro-Stockman "newspapers" to Texas voters was a violation of federal election laws.

On or about May 13, 2014, Defendant knowingly signed a false affidavit, which he caused to be submitted to the Federal Election Commission ("FEC") in relation to a pending complaint before that agency, with intent to impede and obstruct an FEC investigation into Stockman's involvement in the printing, publication, and distribution of the pro-Stockman "newspapers" prior to the Senate primary election. Defendant stated in his FEC affidavit that the publication and distribution of the pro-Stockman "newspapers" "were not conducted in cooperation, consultation, or concert with or at the request or suggestion of Steve Stockman, Stockman for Senate Campaign . . . , or any agent of the Campaign." Defendant

15

further stated in his FEC affidavit that "[n]either Steve Stockman, the Campaign, nor any agent of the Campaign had any material involvement or substantial discussions with me, the Center or any other officers or agents of the Center related to" the publication and distribution of the pro-Stockman "newspapers." Both of these statements by the Defendant were knowingly false. As Defendant was aware at the time he made these statements, the publication and distribution of the pro-Stockman "newspapers" was personally supervised and directed by Stockman.

Count 22 — Stockman was defeated in the Senate primary election held on or about March 4, 2014. On or about March 14, 2014, at the direction of Stockman and Defendant, a direct-mail company refunded approximately $214,718.51 — representing the unspent portion of the $450,571.65 contribution — to Center for the American Future. On or about March 14, 2014, Stockman and Defendant knowingly caused the direct-mail company's Amegy Bank check 022304 in the amount of $214,718.51 to be deposited into Bank of America account xxx7956, which was held in the name Center for the American Future, Inc. Rather than return this money to the donor, Stockman and Defendant caused the money to be used to pay debts associated with Stockman's Senate campaign and to finance personal expenses.

The preceding statement of facts is a summary, made for the purpose of providing the court with a factual basis for Defendant's guilty plea. It does not include all of the facts known to Defendant concerning criminal activity in which he and others engaged, nor does it contain all the facts that the United States could prove in a trial against Defendant or any of his co-conspirators.

## Breach of Plea Agreement

15.   If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, or should Defendant commit any new criminal offenses, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.   Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

17

## Restitution, Forfeiture, and Fines – Generally

16. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

17. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 7 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the

18

basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

19. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

20. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

21. Defendant stipulates and agrees that the property listed in the First Superseding Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.

22. Defendant stipulates and agrees that the factual basis for his guilty plea supports the forfeiture against him and in favor of the United States, and Defendant agrees to the imposition of a personal money judgment against him and in favor of the United States of America as noticed in the First Superseding Indictment. The parties agree that, at or before sentencing, the Court should determine the exact amount of the money judgment to be imposed. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p), exists. Defendant agrees to forfeit any of his property, or his interest in property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied.

23. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

24. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

25. Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

20

## Fines

26. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Waiver of Venue

27. Defendant waives any challenge to venue in the Southern District of Texas.

## Complete Agreement

28. This written plea agreement, consisting of 24 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

21

29. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at __Houston__, Texas, on __October__ __11__, 2017.

_____
Jason T. Posey, Defendant

_____
Philip H. Hilder
Attorney for Defendant

Subscribed and sworn to before me on __October__ __11__, 2017.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

AnnaLou Tirol
Acting Chief, Public Integrity Section

By: _____
Ryan J. Ellersick
Robert J. Heberle
Trial Attorneys
Public Integrity Section
Criminal Division
United States Department of Justice

Abe Martinez
Acting United States Attorney

By: _____
Melissa Annis
Assistant United States Attorney
Southern District of Texas

22

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ' | |
| | ' | |
| **v.** | ' | **CRIMINAL NO. H-17-116S-03** |
| | ' | |
| **JASON T. POSEY** | ' | |

### PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending First Superseding Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Philip H. Hilder
Attorney for Defendant

_____
10-11-17
Date

23

I have consulted with my attorney and fully understand all my rights with respect to the First Superseding Indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

Jason T. Posey
Defendant

Date $10-11-17$

24