IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:17-cr-116-2 |
| | ) | |
| STEPHEN E. STOCKMAN, | ) | The Honorable Lee H. Rosenthal |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**

After the conclusion of his direct appeal, a convict serving a sentence imposed by a federal court may move to vacate that sentence under 28 U.S.C. § 2255 on specific and limited grounds. "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and which would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). In order to obtain such relief, the defendant bears the burden of establishing his claims by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). Moreover, an evidentiary hearing on a § 2255 motion is warranted only when the defendant "produce[s] independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (internal quotation marks omitted); *see also United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013) ("Conclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing. . . . [S]peculative and unsupported accusations of government wrongdoing do not entitle a defendant to an evidentiary hearing.").

Defendant Stephen E. Stockman has fallen far short of satisfying this demanding standard. His motion for relief under § 2255 consists of a lengthy series of false, baseless, and conclusory allegations, each of which is completely unsupported by any evidence whatsoever and affirmatively refuted by the extensive record of this case. In addition, many of Stockman's claims could have been raised on direct appeal, and are therefore waived for purposes of a § 2255 proceeding, or were raised previously and have already been rejected by this Court and the United States Court of Appeals for the Fifth Circuit. Finally, even if any of his claims of error did have merit (which they do not), Stockman has failed to establish that he was prejudiced by any of the alleged errors. Stockman's motion should be denied without a hearing.[1]

## BACKGROUND

I. Stockman's Criminal Conduct[2]

From 2010 to 2014, Stockman spearheaded an extensive and sophisticated scheme to defraud charitable foundations and the individuals who ran them of hundreds of thousands of dollars, which he then funneled through a series of sham charities and nonprofit organizations. Stockman used these large donations not for the charitable and educational purposes repeatedly represented by the defendant to the donors, but rather to line his own pockets and to make hundreds of thousands of dollars in illegal contributions to his campaigns for U.S. House of Representatives and U.S. Senate. Indeed, during a significant portion of the scheme Stockman

---

[1] The United States has filed a pending motion for leave to file an overlength response, in light of the complexity of the case and the number of issues that Stockman raises. (R. Doc. 494.) If the Court denies the pending motion, the United States respectfully requests permission to file a revised version of this Opposition.

[2] A more detailed description of the facts underlying this case is contained in the opinion of the United States Court of Appeals for the Fifth Circuit affirming Stockman's convictions on direct appeal. *United States v. Stockman*, 947 F.3d 253, 255-58 (5th Cir. 2020).

served as a member of the U.S. House of Representatives, and he used the power and prestige of his office to perpetuate the scheme, engaging in a direct assault on the integrity of two elections for federal office. Finally, when confronted with evidence of his wrongdoing, the defendant lied about his activities, falsified official documents, and shipped a co-conspirator and a large portion of the remaining fraud proceeds to Egypt to obstruct his investigation and prosecution. As a result of his white-collar crime spree, Stockman obtained $1,250,571.65 based on false representations and promises.

II. Procedural Background

For the above-described conduct, a federal grand jury returned a 24-count indictment against Stockman on March 28, 2017. (First Superseding Indictment, R. Doc. 23.) On April 12, 2018, following a trial lasting approximately four weeks, Stockman was found guilty of 23 counts of mail fraud, wire fraud, conspiracy to make conduit contributions and false statements, making false statements to the Federal Election Commission, making excessive campaign contributions, money laundering, and filing a false tax return. (Verdict Form, R. Doc. 211.)

On November 7, 2018, the Court sentenced Stockman to a term of imprisonment of 120 months, to be followed by three years of supervised release, and imposed a restitution obligation of $1,014,718.50 and a $2,300 special assessment. (S. Tr., R. Doc. 391, at 39-42; Judgment, R. Doc. 329.) Stockman's conviction was affirmed by the U.S. Court of Appeals for the Fifth Circuit on January 10, 2020. *United States v. Stockman*, 947 F.3d 253 (5th Cir. 2020).

Stockman filed a petition for a writ of *certiorari*, which was denied by the Supreme Court on October 5, 2020. *Stockman v. United States*, No. 20-103 (U.S. Oct. 5, 2020).[3]

On December 22, 2020, the President of the United States commuted Stockman's 120-month term of imprisonment to time served. (Notice of Commutation, R. Doc. 485). The commutation left "intact and in effect the remaining three-year term of supervised release with all its conditions, the unpaid balance of his $1,014,718.51 restitution obligation, if any, and all other components of the sentence." (*Id.* at 4.)[4]

## LEGAL STANDARD

It is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Thus, "[a]fter conviction and exhaustion or waiver of any right to appeal, we are entitled to presume that the defendant stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc) (quotation and alteration marks omitted) (quoting *Frady*, 456 U.S. at 165).

Accordingly, unlike a defendant's direct appeal, a § 2255 proceeding is carefully circumscribed to a limited set of issues. Section 2255 provides that a defendant may move to vacate, set aside, or correct a sentence only "upon the ground that the sentence was imposed in

---

[3] With exceptions not relevant here, a motion under 28 U.S.C. § 2255 must be filed within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). For present purposes, the judgment of conviction became final on October 5, 2020, when the Supreme Court denied Stockman's petition for a writ of *certiorari*. *Clay v. United States*, 537 U.S. 522, 527 (2003). Stockman timely filed his § 2255 motion on October 5, 2021.

[4] Although Stockman has been released from prison pursuant to the presidential commutation, he remains on supervised release, and thus may still pursue a § 2255 motion at this time. *See United States v. Bejarano*, 751 F.3d 280, 285 n.4 (5th Cir. 2014); *United States v. Camargo*, 119 F. App'x 670, 671 (5th Cir. 2005) (per curiam).

violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[R]eview of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). Alleged errors that are not of constitutional or jurisdictional magnitude "may not be raised under section 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal *and*, if condoned, would result in a complete miscarriage of justice." *Id.*

Where a defendant objects in a § 2255 proceeding to alleged trial errors to which no contemporaneous objection was made, the defendant "must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 167. A defendant who fails to raise a constitutional or jurisdictional issue on direct appeal also "waives the issue for a collateral attack on his conviction, unless there is cause for the default and prejudice as a result." *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000).

To establish "cause," the defendant must show that "some objective factor external to the defense prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (internal quotation marks omitted). To demonstrate prejudice, the defendant "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S.

at 170; *see also United States v. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999). This "cause and actual prejudice standard" creates "a significantly higher hurdle than the plain error standard that we apply on direct appeal." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc) (internal quotation marks omitted).

A defendant may show "cause" for a procedural default by establishing that he received ineffective assistance of counsel in violation of the Sixth Amendment. *Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003). To establish a claim of constitutionally ineffective assistance of counsel, a defendant must show both: (1) that counsel's performance was deficient, that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) that such deficient performance prejudiced the defense, that is, "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When considering the first prong of the *Strickland* test, courts must "compare counsel's performance to an objective standard of reasonableness, mindful of the strong presumption of adequacy." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). A court "will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Id.* Indeed, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). "Judicial scrutiny of counsel's performance must

be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

As for the second prong of the *Strickland* standard, the question is "whether a reasonable probability exists that counsel's deficient performance affected the outcome and denied [the defendant] a fair trial." *Chavez*, 193 F.3d at 379. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011); *see also United States v. Kayode*, 777 F.3d 719, 724 (5th Cir. 2014) ("A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of the *Strickland* test."); *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001). Where overwhelming evidence supports a defendant's conviction, the Fifth Circuit has rejected arguments that an error made by counsel was prejudicial under *Strickland*. *See, e.g.*, *United States v. Goodley*, 183 F. App'x 419, 424-25 (5th Cir. 2006) (per curiam); *United States v. Terry*, 69 F. App'x 657 (5th Cir. 2003) (per curiam); *see also United States v. Oakley*, 827 F.2d 1023, 1026 (5th Cir. 1987) (concluding that the defendant's "[m]ere general assertion" of *Strickland* prejudice was insufficient, "especially where, as here, evidence of guilt is overwhelming"). Importantly, "[a]n attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

While *pro se* § 2255 motions are generally construed liberally, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v.*

*Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (per curiam). "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Additionally, "bare, conclusory allegations unsupported by other indicia of reliability in the record, do not compel a federal district court to hold an evidentiary hearing. Thus, a district court does not commit error when it disposes of a habeas petitioner's claims without holding a full-fledged evidentiary hearing when those claims are unmeritorious, conclusory, and wholly unsupported by the record." *Id.* at 1011 n.2; *see also Reed*, 719 F.3d at 374 ("A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents independent indicia of the likely merit of [his] allegations.") (internal quotation marks omitted) (alteration in original); *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008); *Edwards*, 442 F.3d at 265; *Cervantes*, 132 F.3d at 1110 ("If the defendant produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties, she is entitled to an evidentiary hearing on the issue. If, however, the defendant's showing is inconsistent with the bulk of her conduct or otherwise fails to meet her burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary.") (citation omitted); *United States v. Auten*, 632 F.2d 478, 480 (5th Cir. Unit A 1980).

## ARGUMENT

Stockman's § 2255 motion requests that his conviction be vacated based on a laundry list of forty-five brief bullet points, each of which sets forth baseless and conclusory allegations without providing any supporting evidence. (R. Doc. 492, Mot. to Vacate, Set Aside, or Correct

Sentence by a Person in Federal Custody (hereinafter "Mot."), at 11-20). The United States addresses each of Stockman's forty-five bullet points below. Because these self-serving and conclusory allegations are unsupported by any evidence whatsoever—and, indeed, are affirmatively contradicted by the extensive record of this case—Stockman's motion should be denied without a hearing. *See United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013); *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

I. "Prosecutorial Misconduct" (Mot. at 11-12)

Stockman's § 2255 motion alleges that "the government was allowed to weave a tale that went well beyond the actual charges" in order to "prejudice" and "confuse" the jury, and requests relief based upon this purported "Prosecutorial Misconduct." (Mot. at 11). As an initial matter, Stockman did not raise such claims of prosecutorial misconduct at trial or during his direct appeal, and he has not shown cause and actual prejudice for his procedural default. These claims are therefore procedurally barred. *Frady*, 456 U.S. at 167.

Even if he had not procedurally defaulted these claims, Stockman fares no better on the merits of his baseless and conclusory prosecutorial misconduct allegations. Stockman cites no specific examples of the prosecution's alleged tale-weaving, nor could he, since the evidence at trial and the prosecution's arguments were all directly relevant to the extensive charges that Stockman was facing at trial, including charges related to Stockman's four-year scheme to defraud charitable donors of hundreds of thousands of dollars, which Stockman then secretly funneled through a series of sham non-profit entities and spent on Stockman's own personal and campaign expenses. (*See generally* R. Doc. 23, First Superseding Indictment, at 10-22 (setting forth scheme to defraud)). Stockman complains that the United States used such terms as "sham

nonprofits," "bogus charities," and "shell entity" to describe his scheme, but he ignores the overwhelming evidence that his non-profits were in fact shams, his charities were in fact bogus, and his entities were in fact shells. The use of such phrases was not prosecutorial misconduct; it was fair and accurate commentary on the evidence in the case. *See, e.g.*, *Stockman*, 947 F.3d at 264 ("Stockman does not deny that, shortly *after* receiving donations from Rothschild and Uihlein, he misappropriated the funds by disregarding the purposes for which they were donated. Indeed, Stockman does little to dispute the overwhelming evidence that, shortly after receiving it, he quickly diverted donor money to personal and political projects having nothing to do with philanthropy or education."); *United States v. McCann*, 613 F.3d 486, 495 (5th Cir. 2010) ("A prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence.") (internal quotation marks omitted); *United States v. Hernandez-Guevara*, 162 F.3d 863, 874 (5th Cir. 1998) ("We accord wide latitude to counsel during closing argument"). Nor has Stockman shown that any such argument prejudiced him, in light of the overwhelming evidence supporting his convictions.

Stockman tacks on to his prosecutorial misconduct argument a series of similarly spurious and conclusory allegations, each of which is also procedurally defaulted and meritless in any event. He contends that the United States "knowingly misrepresented the evidence as to what a non-profit organization could do and what it could spend," without citing any specific argument or explaining what the alleged misrepresentation entailed.[5] He asserts that the United States "misrepresented evidence related to Rothschild's intent as to his donations through

[5] To the extent that Stockman means to complain that the Court's instructions regarding non-profit entities were erroneous, the United States notes that the Fifth Circuit upheld those instructions in their entirety. *Stockman*, 947 F.3d at 259-60.

impermissible hearsay," without citing any specific prosecutorial statement or acknowledging that the "impermissible hearsay" apparently at issue was properly admitted by this Court after extensive briefing and argument and not challenged by him on appeal. (*See* U.S. Mot. to Admit Written Statement, R. Doc. 143; T. Tr. VI, R. Doc. 282, at 7-11.)

Stockman further claims that the United States "confused Mr. Uihlein by telling him a false scenario about what funds were used for," without citing any specific prosecutorial statement, acknowledging that Uihlein's testimony plainly established that Uihlein was deceived by Stockman, or admitting that the Court has already rejected his challenges to Uihlein's testimony. (*See* T. Tr. (Richard Uihlein), R. Doc. 192, at 22-23, 41-42, 51, 57, 82-83; Order, R. Doc. 269, at 2-5 (rejecting Stockman's argument that Uihlein was not credible and concluding: "The clear weight of the evidence supported the convictions. The jury credited Uihlein's explanation and description of what Stockman told him and what he knew, believed, and expected as a result.")). Finally, Stockman argues that there was "insufficient evidence[] to support finding Defendant guilt[y] of defrauding donors," but this assertion was already rejected by this Court, (Order, R. Doc. 269, at 2-7), and the Fifth Circuit. *Stockman*, 947 F.3d at 263-64.

This scattershot assemblage of vague and conclusory assertions, utterly unsupported by any evidence whatsoever and affirmatively contradicted by the record, falls far short of a claim entitling Stockman to relief or an evidentiary hearing under § 2255. *See, e.g.*, *Cervantes*, 132 F.3d at 1110. Stockman's claims are procedurally defaulted, meritless, and should be rejected. Stockman does not allege ineffective assistance of counsel related to these claims, but to the extent his motion is construed to do so, Stockman has failed to show deficient performance and prejudice under *Strickland* for the reasons set forth above. *See Kimler*, 167 F.3d at 893.

II. <u>"Failure by counsel to object to jury instruction" (Mot. at 12)</u>

Stockman next argues that his convictions should be vacated because his trial counsel failed to object to the jury instruction regarding Count 12 of the First Superseding Indictment, which charged Stockman with making excessive contributions in the form of coordinated expenditures, in violation of 52 U.S.C. §§ 30116(a)(1)(A), 30116(a)(7)(B)(i), and 30109(d)(1)(A)(i), and 18 U.S.C. § 2. According to Stockman, "[d]efense counsel failed to challenge incorrectly used terms that have well-defined meanings under federal campaign finance law," resulting in an "incorrect and misleading jury instruction." This vague and conclusory allegation, which does not specify the "terms" at issue or explain how the jury instruction was allegedly erroneous, is insufficient to merit relief or a hearing under § 2255.

Furthermore, Stockman has not satisfied the stringent *Strickland* standard for establishing ineffective assistance of counsel. First, there was no deficient performance by trial counsel. In fact, Stockman's counsel heavily litigated the propriety of Count 12 and the jury instructions thereon. Counsel unsuccessfully moved to dismiss the count based on an argument that coordinated expenditures must involve "express advocacy," (Mot. to Dismiss Count 12, R. Doc. 92), cross-examined a cooperating defendant extensively regarding express advocacy, (T. Tr. IX (Jason Posey), R. Doc. 285, at 226-228; T. Tr. X (Jason Posey), R. Doc. 395, at 50-54), moved for a judgment of acquittal on Count 12 based on an argument that the government had failed to establish that the offense involved "specific advertising," (T. Tr. X, R. Doc. 395, at 119; Def.'s Rule 29 Mot. for Judgment of Acquittal, R. Doc. 186, at 16-17), and argued that the jury instructions on Count 12 should require as an element that the publications at issue contained "specific advertising". (T. Tr. XI, R. Doc. 286, at 59-62). Counsel also objected to the Count 12

jury instructions at the formal charge conference, on the same basis. (T. Tr. (Final Jury Instructions), R. Doc. 396, at 3). Stockman's claim that his trial counsel did not object to the jury instructions on Count 12 is simply incorrect. To the contrary, counsel were focused on Count 12 throughout this litigation.

Second, there was no prejudice to Stockman in any event, because the Court's instructions on Count 12 were correct, as the Fifth Circuit recognized in rejecting Stockman's sufficiency challenge to his conviction on that count. *Stockman*, 947 F.3d at 260-62 (holding that "express advocacy" is not required for a communication to constitute a coordinated expenditure, and thus a campaign contribution). Stockman has alleged no other error in the Count 12 instruction, nor could he, since that instruction was an accurate statement of the law. Even if counsel had failed to raise this meritless claim, there would have been no prejudice to Stockman. *See Kimler*, 167 F.3d at 893.

III. <u>"Failure to pursue and preserve objections to failure of the indictment to make a proper statement of the crime" (Mot. at 12-13)</u>

The United States construes this argument as a claim that Stockman's counsel provided ineffective assistance by failing to object to the indictment. Stockman contends that "the Indictment was a fictional novel," and that the indictment "had very little to do with the actual charges." This conclusory and nonsensical argument is meritless. As to the first *Strickland* prong, Stockman has not shown deficient performance. He fails to specify any legal error in the indictment to which his counsel failed to object. It would be exceedingly difficult for him to do so in any event, given that his attorneys filed a lengthy series of motions to dismiss the indictment on a wide variety of grounds. (Mot. to Dismiss Count 12, R. Doc. 92; Mot. to Dismiss Counts 1-8, R. Doc. 93; Mot. to Dismiss Counts 9-11, R. Doc. 94; Mot. to Dismiss

Counts 14-22, 24, and 27, R. Doc. 95; Mot. to Strike Surplusage, R. Doc. 96). As for the second *Strickland* prong, Stockman has failed to show prejudice because he has not identified any actual legal defect in the indictment, his challenges to which were repeatedly and properly rebuffed by this Court. *See Kimler*, 167 F.3d at 893. This conclusory and baseless argument should be rejected. *See Reed*, 719 F.3d at 373-74.

IV. "Failure to properly present and object to evidence and instructions on 501(c)(3) and (4) entities" (Mot. at 13)

Stockman complains that evidence at trial regarding Section 501(c)(3) and Section 501(c)(4) nonprofit organizations "was nothing more than a red herring and plot to simply discredit him" and asserts that counsel provided ineffective assistance by "fail[ing] [to] attempt to preclude this evidence." Stockman further claims that counsel "failed to bring in that the activities of [Stockman] were proper and legal under the law," without specifying what evidence he would have had counsel introduce. This vague and conclusory argument is insufficient to merit relief or a hearing. *See Reed*, 719 F.3d at 373-74.

Stockman's *Strickland* argument also fails on the merits. First, there was no deficient performance. Stockman's fraudulent scheme depended heavily on purported Section 501(c)(3) and Section 501(c)(4) nonprofit entities, which Stockman used to trick donors into believing that their funds would be used for legitimate charitable and nonprofit purposes. *See Stockman*, 947 F.3d at 259-60 ("Many of the witnesses discussed 501(c)(3) and 501(c)(4) organizations in their testimony, and some of that testimony even went directly to the elements of mail and wire fraud."); *id.* at 264 (noting "the overwhelming evidence that, shortly after receiving it, [Stockman] quickly diverted donor money to personal and political projects having nothing to do with philanthropy or education"). Given this factual backdrop, there was no basis for defense

counsel to seek to exclude all evidence of Section 501(c)(3) and Section 501(c)(4) organizations. To the contrary, counsel made a reasonable strategic decision to attempt to portray Stockman as a genuine believer in his purported charitable and nonprofit endeavors. (*See, e.g.*, T. Tr. I (Opening Statements), R. Doc. 276, at 62-63 (Stockman counsel's statement that Stockman "may be a visionary" who "doesn't always follow through on all of the important projects he starts" and who "has given away, donated, spent on political causes most of the money that he's ever made"); T. Tr. XI (Stevie Bidjoua), R. Doc. 286, at 6-17 (calling defense witness to testify to Stockman's alleged charitable work in Africa); T. Tr. (Closing Arguments), R. Doc. 220, at 56-57, 105-06 (argument that Stockman wanted to use one of the nonprofits at issue "to engage in Operation Medical Mercy, which involved, conceptually, sending medicines to Africa").

Second, Stockman has not shown that he was prejudiced. There was no basis to exclude all evidence of Section 501(c)(3) and Section 501(c)(4) organizations, the misuse of which was at the heart of Stockman's scheme. Defense counsel's failure to make a meritless argument is by definition not prejudicial. *See Kimler*, 167 F.3d at 893. Similarly, to the extent that Stockman claims that he received ineffective assistance of counsel because his counsel did not seek further modifications to the jury instruction relating to Section 501(c)(3) and Section 501(c)(4) nonprofit entities, (*see* T. Tr. XI, R. Doc. 286, at 42-44 (suggesting alteration to instruction on nonprofit organizations)), there was no error in the jury instruction at issue, which quoted the language of the relevant statute defining such entities. *See Stockman*, 947 F.3d at 259-60 (reviewing for plain error but observing that "[w]e are not convinced that the district court erred by defining section 501(c)(3) and 501(c)(4) organizations in the charge," and noting that "[a]n instruction that mirrors relevant statutory text 'will almost always convey the statute's requirements'") (quoting

*United States v. Lebowitz*, 676 F.3d 1000, 1014 (11th Cir. 2012)). Even if Stockman had identified some error in the instruction providing background information regarding nonprofit organizations, which he has not, he has also not explained how such error would have prejudiced him. Stockman was charged with violating specific federal criminal statutes, not 26 U.S.C. § 501, and the jury was instructed to consider whether Stockman was guilty of each specified criminal charge. There was "overwhelming evidence" supporting the jury's findings of Stockman's guilt. *See Stockman*, 947 F.3d at 264. Given that the jury was properly focused on the issue of fraud and other crimes, the instruction regarding the statutory definition of Section 501(c)(3) and Section 501(c)(4) groups, while helpful as background information, would not have made a material difference to the jury's determination of guilt.

V. "Failure to request a special verdict form" (Mot. at 13)

Stockman next alleges that "defense counsel's failure to request a special verdict form prevented appellate counsel from effectively raising certain issues about what the jury relied upon and actually found." This claim is completely devoid of specificity: it does not explain what inquiries a special verdict form would have made, it does not identify the "certain issues" that appellate counsel allegedly could have raised but did not, and it fails to provide any linkage between the special verdict form and any appellate issue. Such vague and conclusory allegations are insufficient to warrant relief or an evidentiary hearing. *Cervantes*, 132 F.3d at 1110. There is also no basis for relief under *Strickland*, because there was no basis for a special verdict form in this case, and counsel's failure to request one thus was not deficient and did not prejudice Stockman. *See, e.g.*, *Griffin v. United States*, 502 U.S. 46 (1991) (rejecting argument that special verdict form was necessary in multiple-object conspiracy case); *Thomas v. United States*, No.

3:03-cr-188, 2009 WL 3248061, at *6-7 (N.D. Tex. June 18, 2009) ("Attorneys are not required to request unnecessary special verdict forms to render reasonable assistance."). Stockman has provided no reason to believe that a special verdict form would have altered the outcome of his case, given the overwhelming evidence supporting the jury's findings of guilt and the absence of any improper legal theory upon which the jury could have convicted him.

VI. <u>"Failure to pursue a good faith instruction" (Mot. at 13)</u>

Stockman contends that "while defense counsel asked for a good faith instruction on one count, defense counsel failed to request it on others, failed to bring in expert witnesses and witnesses that actually advised [Stockman] about his actions." Again, this claim is utterly devoid of specificity. It does not explain as to which counts a good faith instruction would have been proper, does not identify the purported expert witnesses that Stockman would have had his attorneys call or what they would have testified to, and does not identify the other witnesses that allegedly "advised" Stockman or what they would have testified to. *See Alexander v. Cotter*, 775 F.2d 595, 602 (5th Cir. 1985). This conclusory and baseless argument falls short of the showing required to merit relief or an evidentiary hearing. *Cervantes*, 132 F.3d at 1110; *see also Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010); *United States v. Harris*, 408 F.3d 186, 190 (5th Cir. 2005); *United States v. Gomez*, CR No. C-07-251-2, 2011 WL 13351516, at *5 (S.D. Tex. May 1, 2011) ("Because Gomez does not identify the uncalled witnesses, the subject matter of their potential testimony, or what defense they might establish, his allegations are merely conclusory and do not raise a constitutional issue in a habeas proceeding.") (internal quotation marks omitted). Stockman has also failed to show deficient performance and prejudice under *Strickland*. The United States is unaware of any charge as to which a good faith instruction

would have been appropriate. *See Stockman*, 947 F.3d at 262 (holding that a good faith instruction was not necessary as to the tax and campaign finance charges because the jury instructions required a finding of willfulness). Given the overwhelming evidence of Stockman's guilt, a good faith instruction or more witnesses would not have helped him in any event.

VII. "Failure to call an expert on election law, campaign expenditures, and 501(c)(4)'s ability to mail newspaper after judge qualified witness as an expert" (Mot. at 14)

Stockman argues that his counsel provided ineffective assistance by failing to call an expert witness on election law, campaign expenditures, and Section 501(c)(4) organizations. Stockman complains that "despite moving for admission of an expert and it being granted after a hearing, defense counsel never called the expert," thus "leaving the jury without guidance on the mailing legalities" and "the misleading and legally incorrect arguments as to permissible activities." Stockman appears to be referring to the defense's decision not to call as a trial witness David A. Warrington, an attorney and potential expert witness who was the subject of pre-trial litigation and a pre-trial hearing conducted pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The United States moved prior to trial to exclude Mr. Warrington's expert testimony, noting among other things that his proffered testimony on legal issues would be improper, as the Court is the sole arbiter of the law. (U.S. Mot. *in Limine* to Exclude Improper Expert Testimony, R. Doc. 137.) The Court conducted an extensive *Daubert* hearing at which Warrington testified and was subject to cross-examination. (Tr. (*Daubert* hearing), R. 168.) Of particular relevance here, Warrington acknowledged on cross-examination that: (1) the vast majority of his experience was with political causes rather than candidate work, which was the subject of this case (*id.* at 17-22); (2) that he had never sat in on a fundraising pitch with a current or former

elected official, or personally participated in the raising or spending of funds by a nonprofit where a current or retired elected official was a participant in the raising of the funds (*id.* at 25, 27); (3) that he had never published any work concerning customs and practices in the nonprofit political fundraising industry (*id.* at 27-28); (4) that the highest commission that he had ever observed in the nonprofit political fundraising context was 25 percent (*id.* at 30); (5) that the highest commission that he had ever earned in the nonprofit political fundraising context was 15 percent (*id.* at 31); (6) that even where multiple fundraisers participated in a pitch, the aggregate commission "typically, is no more than 25 percent" (*id.*); and (7) that when a clear written or oral representation is made as to how the funds will be used, the industry custom and practice is for the funds to be spent consistent with that representation. (*Id.* at 32).

The Court ruled that the defense could call Mr. Warrington as an expert on fundraising issues, but he could not testify about any rule or regulation, as matters of law would be addressed by the Court in its instructions. (*Id.* at 43-44). The Court further identified multiple areas as to which Mr. Warrington could be vigorously cross-examined:

> But the government has free rein on vigorous cross-examination on the limits of his personal experience and knowledge, and how that might impact, for example, what he understands to be a reasonable range of expenses and the way expenses or costs are incurred are handled, and what the practices are there. His experience there could be, in fact, very limited. And there may be differences in the campaign, political candidate campaign arena that he doesn't know about, because his experience in that area is somewhat limited. So government has free rein to vigorously explore this.

(*Id.*) Ultimately, the defense elected not to call Mr. Warrington as a witness at trial.

Stockman's claim fails for multiple reasons. As an initial matter, his brief allegation is conclusory in nature, and fails to specify the nature of the "guidance on the mailing legalities" or the "misleading and legally incorrect arguments as to permissible activities" that Stockman

asserts Mr. Warrington would have addressed. Such a vague argument is insufficient to warrant relief or an evidentiary hearing. *Cervantes*, 132 F.3d at 1110.

Even if Stockman's argument were not conclusory in nature, it would fail under *Strickland*. First, there was nothing deficient about defense counsel's performance. Counsel identified an expert witness who could address customs and practices in the nonprofit fundraising industry, noticed the witness, and conducted a *Daubert* hearing related to the witness. The *Daubert* hearing established that the cross-examination of Mr. Warrington at trial would likely hurt the defense much more than his direct examination would help. Not only would Mr. Warrington's limited experience in the particular area of interest in this case be explored, but Mr. Warrington would also testify that he received only a modest commission of 15 percent, and had never seen a commission higher than 25 percent. Mr. Warrington would also testify that the custom and practice in the industry was to abide by written and oral representations made to the donor. In a case in which Stockman regularly looted the entirety of charitable contributions for his own personal and campaign expenses, and in which Stockman repeatedly misrepresented the destination of the funds to the donors, such testimony by a defense expert could be devastating. It was a sound strategic decision for the defense not to call Mr. Warrington, and Stockman has failed to rebut "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

Second, there was no prejudice. The decision not to call Mr. Warrington *benefitted* Stockman, as explained above. And even setting aside the issue of Mr. Warrington's cross-examination, Mr. Warrington's testimony regarding customs and practices in the nonprofit fundraising industry would not have altered the jury's verdict given the overwhelming evidence

that Stockman perpetrated an intentional scheme to defraud—something that is not consistent with any industry custom or practice. Finally, Mr. Warrington would in any event have been unable to address the "legalities" and "legally incorrect arguments" of which Stockman complains, as his expert testimony was properly limited by the Court to non-legal issues.

## VIII. "Failure to object to factual misstatements by the prosecution and misleading arguments" (Mot. at 14)

Stockman's next claim is that his counsel provided ineffective assistance by failing to object to "repeated misstatements of fact and law." This claim is utterly conclusory. Stockman does not identify a single statement of any kind in support of his claim. This baseless and spurious assertion, unsupported by any independent indicia of the merit of his claims, is insufficient to warrant relief or an evidentiary hearing. *Reed*, 719 F.3d at 374. Stockman's conclusory argument also fails to demonstrate deficiency or prejudice under *Strickland*.

## IX. "Failure to argue that there was no defrauded donor" (Mot. at 14)

Stockman argues that his counsel provided ineffective assistance by failing to "argue that there was no defrauded donor," thus "violating [Stockman's] due process rights . . . [and] rights to be informed of the accusation." As an initial matter, this claim is conclusory. It provides no context or detail at all regarding the desired argument at issue. It is therefore insufficient to warrant relief or an evidentiary hearing. *Reed*, 719 F.3d at 374. Stockman also fails to establish deficient performance or prejudice under *Strickland*. Indeed, there is no way that he could do so, since his claim is simply false. A review of defense counsel's opening statement and closing arguments demonstrates that counsel repeatedly and ably contended that Uihlein and Rothschild were not defrauded by Stockman. (*See* T. Tr. I (Opening Statements), R. Doc. 276, at 59-69; T. Tr. (Closing Arguments), R. Doc. 220, at 43-107.) These arguments *were* made to the jury; they

were simply unavailing in light of the overwhelming evidence of Stockman's guilt.

X. "Failure to file motions as directed by Defendant" (Mot. at 14)

Stockman contends that his counsel provided ineffective assistance by failing to "file motions as directed by [Stockman]." Again, this claim is utterly conclusory. Stockman does not identify a single motion that counsel failed to file, nor does he explain how that failure constituted deficient performance or prejudiced him. This baseless and conclusory assertion, unsupported by any independent indicia of the merit of his claims, is insufficient to warrant relief or an evidentiary hearing. *Reed*, 719 F.3d at 374. Stockman's conclusory argument also fails to demonstrate deficiency or prejudice under *Strickland*.

XI. "Failure to present to the jury evidence and law to show the primary v exclusive use of funds for charitable purposes" (Mot. at 14)

Stockman argues that his counsel provided ineffective assistance by failing to present expert testimony and to "request basic jury instructions that would have addressed" evidence regarding the use of funds for charitable purposes. As to the calling of the expert witness, Stockman's argument is conclusory, fails to show deficient performance and prejudice under *Strickland*, and should be rejected for the reasons set forth in Section VII of this Opposition.

As to the evidence and jury instructions that Stockman alleges his counsel should have requested regarding the use of charitable funds, Stockman's argument is again conclusory. He does not say anything about the content of such a jury instruction, cites no authority in support of it, and fails to explain what "evidence" he is referring to. This conclusory argument should be rejected without an evidentiary hearing. *Reed*, 719 F.3d at 374. Stockman has also failed to show deficient performance or prejudice under *Strickland*. As explained above in Section IV of this Opposition, Stockman's counsel performed reasonably in light of the law governing

nonprofit entities and the role those nonprofit entities played in this case. There was also no prejudice to Stockman, as the Fifth Circuit affirmed this Court's jury instructions, which recited the text of the relevant statute. *Stockman*, 947 F.3d at 259-60. Additionally, given the overwhelming evidence of Stockman's guilt of the charged criminal offenses, no additional jury instruction about the regulations governing nonprofit entities would have made a difference to the jury's verdict. Stockman's guilt did not hinge on the difference between "primary" and "exclusive" use of funds for charitable purposes by a Section 501(c)(3) or Section 501(c)(4) entity, as Stockman seems to suggest; it hinged on the overwhelming evidence of his purposeful deception of charitable donors and his misappropriation of their donations for his own personal and campaign expenses.

XII. "Failure to demand any emails between Lois Lerner and the IRS or with DOJ personnel, or other IRS with DOJ concerning political retribution against Defendant" (Motion at 15)

Stockman next complains that his counsel failed to request or subpoena emails between Lois Lerner and unspecified Internal Revenue Service and Department of Justice personnel, asserting vaguely and baselessly that such emails would have shown "targeted political retaliation." Once again, Stockman levels a conclusory allegation, unsupported by any evidence whatsoever indicating that Lerner has anything to do with his case,[6] that any such emails exist, or that his prosecution was improperly motivated. For this reason alone, his claim fails. *Reed*, 719

[6] On November 29, 2011, the IRS issued a letter to Life Without Limits, a sham charity that was later used by Stockman as part of the fraudulent scheme, certifying that Life Without Limits was exempt from federal income tax under Section 501(c)(3). This letter was signed by Lerner in her capacity as "Director, Exempt Organizations." Stockman repeatedly used the letter during the scheme, to convince donors that Life Without Limits was a legitimate charity. *See, e.g.*, R. Doc. 235, Gov. Ex. 2012-3j (Stockman sending letter to Rothschild's assistant); R. Doc. 239, Gov. Ex. 2013-2j (co-defendant Jason Posey sending letter to Uihlein's accountant).

F.3d at 374. Stockman's failure to present a shred of evidence is not surprising. It was his own unlawful conduct, not some improper motive, that led to his prosecution.

Stockman also fails to demonstrate deficient performance and prejudice under *Strickland*. The United States met and exceeded its discovery obligations throughout this litigation, providing early and extensive production of Rule 16, Jencks Act, and other materials. Defense counsel acknowledged that the government had been accommodating in helping him navigate those discovery materials, (Tr. (Pretrial Hearing), R. Doc. 271, at 6), and noted that discovery had "been very smooth for us. I will compliment the government, they've made the discovery accessible; and they've made themselves accessible to help us identify documents." (Tr. (Pretrial Hearing), R. Doc. 392, at 8.) Furthermore, contrary to Stockman's assertions, on February 14, 2018, his counsel sent a letter to the United States requesting a wide variety of documents, including "[a]ny and all emails, documents, memoranda, letters, texts or other materials to or from Lois Lerner containing the words 'Stephen E. Stockman,' 'Stephen Stockman,' 'Steve Stockman,' or 'Stockman' or relating to Mr. Stockman being investigated or prosecuted." The United States responded on February 22, 2018, that it had fully complied with its discovery obligations, and that "[t]o the extent that [the materials requested] are in the possession of the prosecution team and fall within the government's discovery obligations, they have already been produced to you."[7] Stockman fails to show that counsel's performance was deficient, particularly in the absence of any indication that such records exist or were ever in the possession of the prosecution team. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Similarly, Stockman cannot establish that he was prejudiced by the failure to obtain documents that the

[7] The full text of these letters is not part of the record of this case. The United States will file copies of the letters at the Court's request.

prosecution team does not possess. Stockman's claim is nothing more than baseless speculation; he offers no basis to believe that such documents exist or would have led to a different outcome in his proceeding. His claim is also contradicted by the extensive record of this case, which established that Stockman was properly prosecuted and convicted based on his purposeful orchestration of a sprawling fraudulent scheme to divert charitable funds for personal and campaign purposes. This allegation is inadequate to merit relief or an evidentiary hearing.

XIII. "Failure to respond to a government's pre-trial motion" (Mot. at 15)

Again, Stockman makes a conclusory assertion unbacked by any specifics or evidence. Stockman does not even identify the pre-trial motion to which his counsel allegedly did not respond, or explain how this prejudiced him. This vague and conclusory allegation is insufficient to merit relief or an evidentiary hearing. *Reed*, 719 F.3d at 374. In any event, Stockman cannot show deficient performance or prejudice under *Strickland*, since the record of the case establishes that Stockman was ably represented by counsel who aggressively litigated pre-trial issues. The Court always permitted defense counsel an opportunity to be heard before deciding substantive issues in the case, whether in writing, orally, or both.

XIV. "Failure to properly preserve pretrial and trial objections" (Mot. at 15)

Stockman once again makes a vague and conclusory allegation of error without explaining the specific basis of his argument. It is simply not sufficient for a § 2255 movant to demand relief or an evidentiary hearing based on a formless assertion that trial counsel failed to properly preserve unidentified objections. *Reed*, 719 F.3d at 374. Stockman also has not demonstrated deficient performance and prejudice under *Strickland*. He was represented by three able and experienced attorneys at trial, and the United States is unaware of any meritorious

claim of error to which defense counsel failed to preserve an objection.

XV. "Failure to provide Defendant his case file and records" (Mot. at 15)

Stockman again makes a conclusory allegation but gives the Court no evidence or third-party indicia of reliability to act on. Stockman does not identify the categories of materials that he allegedly does not possess, does not provide any documentation of any request he has made to defense counsel for such materials, and does not explain how the lack of such materials has prejudiced him, particularly given his extensive citations to the record of this case. (*See* Mot. at 3-10.) This conclusory allegation is insufficient to merit relief or an evidentiary hearing. *Reed*, 719 F.3d at 374. Stockman's vague allegation is also insufficient to establish deficient performance and prejudice under *Strickland*. *See United States v. Trevino*, 554 F. App'x 289, 295 (5th Cir. 2014) (per curiam) (affirming district court's denial of § 2255 movant's motion for an order requiring former counsel to produce case file, noting that "conclusory allegations alone do not warrant discovery; instead, the petitioner must set forth specific allegations of fact") (internal quotation marks omitted); *Vera v. United States*, No. 2:13-cv-13, 2013 WL 5509193, at *7-8 (N.D. Tex. Oct. 4, 2013) (affirming report and recommendation rejecting claim of ineffective assistance based on alleged failure to provide case file to defendant, since "[t]he right to obtain files . . . is not one of a constitutional magnitude" and "defendant has failed to establish any causal connection between not receiving his case files from his attorney and any harm he suffered as a result of that failure").

XVI. "Failure to conduct proper investigation" (Mot. at 15)

Stockman again makes a vague and conclusory allegation of error without explaining the specific basis of his argument. It is insufficient for a § 2255 movant to demand relief or an

evidentiary hearing based on a vague claim that trial counsel failed to conduct a proper investigation, without any explanation of what counsel allegedly failed to investigate or how the evidence uncovered by such an investigation would have altered the outcome of the case. *Reed*, 719 F.3d at 374. Stockman also has not demonstrated deficient performance and prejudice under *Strickland*. He was represented by three able and experienced attorneys at trial who were well versed in the facts of the case and the voluminous discovery. The United States is unaware of any issue that counsel failed to investigate and that would have made a material difference in the proceeding, particularly given the overwhelming evidence of Stockman's guilt.

XVII. <u>"Failure to provide Defendant with evidence or present evidence uncovered by private investigator hired to obtain evidence" (Mot. at 15)</u>

Stockman complains that he paid for a private investigator, but defense counsel "failed to provide any of the information regarding witnesses['] false or misleading testimony." Again, this vague, self-serving, and conclusory assertion is insufficient to warrant relief or an evidentiary hearing. *Reed*, 719 F.3d at 374. Stockman provides no evidence that his alleged private investigator uncovered any indication of "false or misleading testimony," much less specify which witnesses he paid to "investigate". He also fails to explain how any such information would have made any difference to the outcome of his case. For the same reasons, he fails to demonstrate deficient performance and prejudice under *Strickland*.

XVIII. <u>"Refusal by counsel to file Motion on wrongful prosecution" (Mot. at 15-16)</u>

Stockman argues that his counsel provided ineffective assistance by "fail[ing] to challenge the prosecution as simply a political prosecution" and "refus[ing] to pursue these matters as political retaliation." Stockman's argument is again conclusory in nature. He does not provide a shred of evidence that any improper reason motivated his prosecution. Nor could

he, since the prosecution was based upon his own unlawful conduct, not some impermissible purpose. Such an utterly baseless claim is insufficient to warrant relief or an evidentiary hearing. *Reed*, 719 F.3d at 374. Stockman also fails in any event to establish deficient performance and prejudice under *Strickland*. Counsel did in fact attempt (baselessly) to insinuate such motives at trial, but were properly prevented from doing so by the Court. (*See* T. Tr. VIII, R. Doc. 284, at 147, 153, 159, 169-70 (defense counsel repeatedly referring to the 2011 Life Without Limits tax exemption letter as "the Lois Lerner letter"); T. Tr. II, R. Doc. 277, at 6-8 (defense counsel unsuccessfully seeking to cross-examine government agent based on baseless claims of selective prosecution).)[8] And in any event, a failure by counsel to raise a meritless claim is by definition nonprejudicial. *Kimler*, 167 F.3d at 893. Finally, Stockman's motion appears to make oblique reference to concepts of bribery law established in *McDonnell v. United States*, 136 S. Ct. 2355 (2016), but this is not a bribery case, and those concepts have no application here.

XIX. <u>"Failure to properly cross examine witnesses" (Mot. at 16)</u>

Again, Stockman levels a vague and conclusory claim without specifics. Stockman fails to explain how the cross-examination of these "witnesses, in particular Mr. Posey," was in his view deficient. He also fails to explain how he was prejudiced. Such conclusory allegations are insufficient to merit relief or an evidentiary hearing, and do not come close to satisfying the stringent *Strickland* standard. *Reed*, 719 F.3d at 374. Indeed, defense counsel cross-examined

[8] As the United States noted prior to trial, such claims of selective prosecution are for the Court, not the jury. (U.S. Mot *in Limine* to Preclude Argument to the Jury Regarding Selective or Vindictive Prosecution, R. Doc. 119.) *See Armstrong*, 517 U.S. 456, 463 (1996); *In re United States of America*, 397 F.3d 274 (5th Cir. 2005) (per curiam). Despite efforts by Stockman's counsel to insinuate baseless claims of selective prosecution to the jury, Stockman never filed a selective prosecution motion or produced a single piece of evidence that would have supported such a claim.

Posey in detail and at length, including by confronting him with his prior statements. (T. Tr. (Jason Posey), R. Doc. 205, at 208-54; T. Tr. (Jason Posey), R. Doc. 238, at 5-55, 72-74, 77.)

XX. <u>"Failure to interview any witnesses ahead of trial" (Mot. at 16)</u>

Stockman's conclusory allegation provides no evidence whatsoever that his trial counsel failed to interview any witnesses ahead of trial, or that defense counsel's performance was deficient and prejudiced Stockman. Stockman does not even specify a single witness at issue, provide any indication that such witness would have been available or amenable to a pre-trial interview with his attorneys, or explain how a pre-trial interview of that witness would have changed the witnesses' testimony such that it would have made a material difference in the outcome of Stockman's case. Such a vague, baseless, and conclusory assertion is insufficient to warrant relief or an evidentiary hearing. *Reed*, 719 F.3d at 374; *see also Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997) (rejecting similar argument as "pure speculation, insufficient to overcome the strong presumption of competency and the high burden of actual prejudice required to prove ineffective assistance of counsel"); *Gomez*, 2011 WL 13351516, at *5 (rejecting § 2255 motion based on failure to interview cooperating co-defendant prior to trial, noting that counsel extensively cross-examined the witness and that "[a]ssuming that she was even available or amenable to interview, Gomez has not established any harm from his counsel's failure to interview" the co-defendant). Stockman's claim also appears to be factually inaccurate, since the defense called one of Stockman's associates and had knowledge of her likely testimony prior to her testimony. (*See* T. Tr. XI, R. Doc. 286, at 4.)

XXI. <u>"Failure to challenge judge's striking of witnesses" (Mot. at 16)</u>

This claim is also conclusory and should be rejected on that basis. *Reed*, 719 F.3d at 374.

Stockman does not specify any of the witnesses at issue or explain how the exclusion of those witnesses was erroneous. Counsel heavily litigated issues of witness testimony prior to and during trial and, in fact, obtained a victory by securing the Court's permission to call David A. Warrington as an expert witness, though counsel made a sound strategic decision ultimately not to call him at trial. Finally, a failure by counsel to raise a meritless claim cannot be prejudicial. *Kimler*, 167 F.3d at 893.

XXII. <u>"Failure to properly file the Motion to Dismiss in claiming that the donations were going to the campaign" (Mot. at 16)</u>

This claim should be rejected as conclusory. *Reed*, 719 F.3d at 374. Stockman does not explain what sort of motion to dismiss he has in mind or why it would have had merit. Nor has Stockman shown deficient performance and prejudice. Counsel filed several motions to dismiss the indictment, and overwhelming evidence established that Stockman fraudulently diverted the charitable contributions he raised to fund his congressional campaigns.

XXIII. <u>"Failure to call into question the legitimacy of the government's contention that Wells Fargo accounts were opened by the Defendant" (Mot. at 16)</u>

This claim should also be rejected as conclusory and baseless. *Reed*, 719 F.3d at 374. Stockman does not specify which bank accounts he is referring to or provide any evidence whatsoever that he was not in control of those accounts. Stockman also fails to show deficient performance and prejudice. Overwhelming evidence established that Stockman utilized dozens of bank accounts in furtherance of his fraudulent scheme, including at least 22 Wells Fargo accounts. (*See* R. Doc. 229, Gov. Ex. 47 (summary chart of relevant bank accounts).) Stockman's signature appears on the account opening documents for many of the accounts. (*See, e.g.*, R. Doc. 224, Gov. Ex. 1, at 14 (Stockman's signature on account opening documents for

Life Without Limits x2178, which Stockman used to route charitable funds for his personal and campaign use); Gov. Ex. 2, at 13 (same for Life Without Limits x5346).) Testimony established that other accounts were opened at Stockman's direction. (*See, e.g.*, T. Tr. (Jason Posey), R. Doc. 205, at 69 ("Q: And while you were in Virginia, Mr. Posey, did you open several new bank accounts? A: Yes I did. Q: Who told you to open those bank accounts? A: Mr. Stockman did."), 83 (explaining Stockman's direction to Posey to take the remaining balance of Life Without Limits x2178 and move it into two new Life Without Limits accounts in Posey's name).)

XXIV. "Failure to properly argue that donors were not defrauded because the donations were not going into Defendant's campaign but were being used for legal non-profit purposes" (Mot. at 16-17)

This vague, conclusory, and baseless argument is insufficient to warrant relief or an evidentiary hearing. *Reed*, 719 F.3d at 374. Stockman does not explain what "legal non-profit purposes" he wanted counsel to argue he used the money for, or explain what allegedly "false evidence" and "improper arguments" were presented by the government. Stockman also fails to show deficient performance and prejudice. As the Fifth Circuit recognized, there was "overwhelming evidence" that Stockman quickly diverted charity money "to personal and political projects having nothing to do with philanthropy or education." *Stockman*, 947 F.3d at 264. Stockman's argument to the contrary is belied by the overwhelming record evidence showing that he did in fact route hundreds of thousands of dollars of charitable and nonprofit funds into his congressional campaigns and did not use those funds for "legal non-profit purposes." Indeed, the jury was presented evidence tracing the disposition of every dollar raised as part of the fraudulent scheme. (*See, e.g.*, R. Doc. 239, Gov. Ex. 2013-1a (summary chart tracing disposition of $350,000 Uihlein charitable contribution).) Any alleged failure to argue to

the contrary by defense counsel would not have constituted deficient performance, and could not have prejudiced Stockman, in light of this overwhelming financial evidence.

XXV. "Failure to show that there was no evidence or that evidence was insufficient to support finding Defendant guilty of defrauding donors" (Mot. at 17)

This conclusory assertion fails to address any specific evidence or provide any independent indicia of reliability, and should be rejected on that basis. *Reed*, 719 F.3d at 374. Stockman also fails to show deficient performance and prejudice under *Strickland*. Counsel did in fact argue that the evidence was insufficient, both at trial and on appeal, and these arguments were properly rejected by this Court and the Fifth Circuit. *See* Order, R. Doc. 269 (denying post-trial Rule 29 motion); *Stockman*, 947 F.3d at 263-64 (affirming denial of Rule 29 motions and holding that the verdicts were supported by sufficient evidence of Stockman's fraudulent scheme and fraudulent intent). Even if counsel had not made these sufficiency arguments, a failure by counsel to raise a meritless claim cannot be prejudicial. *Kimler*, 167 F.3d at 893.

XXVI. "Failure to object to government misconduct" (Mot. at 17)

Stockman again makes a conclusory assertion of ineffective assistance without citing any specific statements, authority, or evidence in support of his claim. Stockman identifies no improperly admitted evidence and no "misleading" argument to which counsel allegedly failed to object. Such baseless and vague allegations are insufficient to merit relief or an evidentiary hearing. *Reed*, 719 F.3d at 374. Stockman also fails to establish deficient performance and prejudice. As noted previously, Stockman was represented by able counsel who raised numerous evidentiary objections and legal arguments before, during, and after trial. There was no prejudice in any event, because the evidence at trial was properly admitted as relevant to Stockman's long-running fraudulent scheme. (*See* First Superseding Indictment, R. Doc. 23, at

10 (charging fraud scheme from in or around May 2010 through in or around October 2014).) *See Kimler*, 167 F.3d at 893.

XXVII. <u>"Failure of counsel to understand what the laws were for which their client was charged resulting in incompetent defense" (Mot. at 17)</u>

This is another conclusory claim of ineffective assistance for which Stockman provides no specificity or independent indicia of reliability, and it should be rejected on that basis. *Reed*, 719 F.3d at 374. Stockman does not identify any laws that counsel allegedly did not understand or how such lack of understanding prejudiced Stockman. For the same reasons, his claim fails to establish deficient performance and prejudice. Counsel ably litigated the case, including by making numerous arguments and objections related to legal issues and jury instructions.

XXVIII. <u>"Failure to present law and evidence that expenditures were not fraudulent but were within the non-profit laws and established protocol" (Mot. at 17)</u>

This vague and conclusory allegation is repetitive and should be rejected for the same reasons explained in Section XXIV, above.

XXIX. <u>"Failure to explain the difference between 'advocacy' and 'express adv[o]cacy' and when each is legally allowed or prohibited" (Mot. at 17)</u>

This brief and vague claim, which lacks any specifics about the "difference" that Stockman believes should have been "explain[ed]" or how such lack of explanation prejudiced him, should be rejected as conclusory. *Reed*, 719 F.3d at 374. Stockman has also failed to establish deficient performance and prejudice. As noted previously in Section II, counsel repeatedly attempted to inject "express advocacy" into this case, but a finding of "express advocacy" was simply not required. *See Stockman*, 947 F.3d at 260-61 (holding that Count 12 did not require a showing of express advocacy). Any "explanation" of the sort Stockman seeks would therefore have been irrelevant and inadmissible.

XXX. <u>"Failure to present claims of double jeopardy" (Mot. at 17)</u>

This claim is utterly conclusory. Stockman provides no basis to believe that there was any double jeopardy issue in this case whatsoever. He also fails to establish deficient performance and prejudice under *Strickland*. This vague and baseless allegation should be rejected. *Reed*, 719 F.3d at 374.

XXXI. <u>"Failure to present and preserve clear confrontation clause violations" (Mot. at 18)</u>

Stockman next argues that his counsel was constitutionally ineffective because counsel did not preserve an objection under the Confrontation Clause to testimony by Rothschild's assistant, Jean Dellman. As an initial matter, this claim should be rejected as conclusory because Stockman fails to identify any particular portions of Dellman's testimony that he believes violated his Confrontation Clause rights and fails to explain how such testimony prejudiced him. *Reed*, 719 F.3d at 374.

Stockman also fails to show deficient performance and prejudice under *Strickland*. His attorneys did, in fact, object to a written statement by Rothschild that was introduced during Dellman's testimony on hearsay and Confrontation Clause grounds. This objection was properly overruled by the Court as the written statement by Rothschild at issue was non-testimonial, and Stockman did not raise the issue on direct appeal. (*See* Stockman's Resp. to U.S. Mot. to Admit Written Statement, R. Doc. 155; T. Tr. VI, R.. Doc. 282, at 6-11, 111-12.) Stockman fails to identify any other specific portion of Dellman's testimony that violated the Confrontation Clause, or to identify any out-of-court statements by Rothschild that were testimonial in nature. He also cannot show prejudice, since that was no Confrontation Clause error in the admission of Dellman's testimony, and since other overwhelming evidence established his guilt in any event.

XXXII. "Failure to submit proper jury instructions" (Mot. at 18)

Again, this claim is utterly conclusory. Stockman identifies no specific error in the jury instructions and provides no basis to believe that counsel submitted improper jury instructions. For the same reasons, he fails to establish deficient performance and prejudice under *Strickland*. *See Stockman*, 947 F.3d at 258-60 (rejecting Stockman's claim of error regarding jury instructions). This vague and baseless allegation should be rejected. *Reed*, 719 F.3d at 374.

XXXIII. "Failure to challenge the judge's 'finding' of express advocacy" (Mot. at 18)

This conclusory claim is repetitive and meritless, and should be rejected for the reasons set forth in Sections II and XXIX, above. Most notably, defense counsel repeatedly argued the express advocacy issue, and no finding of express advocacy was required in order to convict Stockman. *Stockman*, 947 F.3d at 260-61.

XXXIV. "Failure to object and preclude evidence unrelated to Defendant" (Mot. at 18)

Stockman again levels a conclusory allegation devoid of specifics or supporting evidence, and it should be rejected on that basis. *Reed*, 719 F.3d at 374. Stockman fails even to identify the evidence of "misconduct by others not on trial" of which he complains, and the United States is unaware of what evidence Stockman means to reference. Stockman also fails to establish deficient performance and prejudice.

XXXV. "Failure to require the 'scheme' to be relevant to the charges" (Mot. at 19)

This allegation, which is again devoid of specifics or supporting evidence, should be rejected as conclusory. *Reed*, 719 F.3d at 374. The claim also makes no sense. The scheme to defraud *was* the basis of the first eight counts of the indictment, so the scheme by definition was relevant to the charges in the case. (First Superseding Indictment, R. Doc. 23, at 1-24.)

Stockman also fails to identify any specific evidence or argument that allegedly confused the jury, and he has not shown how such evidence or argument had a material impact on the outcome of his case. He has thus failed to satisfy the stringent *Strickland* standard.

XXXVI. "Failure to pursue the political motivation and retaliatory conduct and bias of Lois Lerner and her staff" (Mot. at 19)

This baseless and conclusory allegation is repetitive and should be rejected for the reasons set forth in Sections XII and XVIII, above.

XXXVII. "Failure to object to requested jury instructions" (Mot. at 19)

Again, this claim is utterly conclusory. Stockman identifies no specific error in the jury instructions and provides no basis to believe that counsel submitted improper jury instructions. For the same reasons, he fails to establish deficient performance and prejudice under *Strickland*. *See Stockman*, 947 F.3d at 258-60 (rejecting Stockman's claim of error regarding jury instructions). This vague and baseless allegation should be rejected. *Reed*, 719 F.3d at 374.

XXXVIII. "Failure to properly respond to jury's questions" (Mot. at 19)

This vague and baseless claim, unsupported by any specificity, evidence, or third-party indicia of reliability, should be rejected as conclusory. *Reed*, 719 F.3d at 374. Stockman provides no specifics regarding how, in his view, counsel should have proposed responding to the jury's questions, any authority supporting such a proposed response, or any explanation regarding how the answers provided by the Court were erroneous and prejudiced him. For the same reasons, Stockman fails to show deficient performance and prejudice under *Strickland*.

XXXIX. "Failure to try and preclude witnesses" (Mot. at 19)

Stockman contends that he received ineffective assistance of counsel because his attorneys failed to preclude witnesses "that were simply there to make [Stockman] look like he

was misusing charitable contributions" and to preclude "Rothschild's assistant from bringing in his state of mind." This argument should be rejected as conclusory. Stockman does not identify any witnesses other than Dellman, does not explain specifically how such witness testimony was irrelevant or inadmissible, and does not establish how such testimony prejudiced Stockman. Nor has Stockman established deficient performance and prejudice under *Strickland*, for the same reasons. The one witness whom Stockman specifically identifies, Dellman, properly testified regarding documentary evidence establishing Rothschild's state of mind over defense objections, as described in Section XXXI, above. Even if such testimony had been inadmissible, its admission would not have changed the result given the other overwhelming evidence of Stockman's guilt, including testimony by two cooperating defendants regarding the defendant's fundraising pitches to Rothschild and Uihlein and voluminous financial records establishing Stockman's misuse of the funds for personal and campaign expenses.

## XL. "Failure to preserve multiplicitous and duplicitous arguments" (Mot. at 19)

This claim is conclusory. Stockman identifies no multiplicity or duplicity problem in the indictment, provides no authority supporting his argument, and fails to explain how such an issue prejudiced him. He also fails to establish deficient performance and prejudice under *Strickland*. This vague and baseless allegation should be rejected. *Reed*, 719 F.3d at 374.

## XLI. "Failure to pursue remand for improper prosecution comments and evidence in grand jury" (Mot. at 19)

This claim is also conclusory. Stockman identifies no improper prosecutorial comments or evidence in the grand jury, provides no authority supporting his argument, and fails to explain how such commentary or evidence prejudiced him. He also fails to establish deficient performance and prejudice under *Strickland*. This vague and baseless allegation should be

rejected. *Reed*, 719 F.3d at 374.

XLII. "Defense counsel appearing to concede guilt" (Mot. at 20)

Again, Stockman makes a vague and conclusory allegation of error unsupported by any authority or even citation to the record. Stockman identifies no statement in which defense counsel "appear[s] to concede guilt," nor is the United States aware of any such statement. Stockman also provides no authority supporting his argument, and fails to explain how this alleged statement prejudiced him. He also fails to establish deficient performance and prejudice under *Strickland*. This vague and baseless allegation should be rejected. *Reed*, 719 F.3d at 374.

XLIII. "Defendant contradicting their client" (Mot. at 20)

The United States assumes that Stockman means to allege that defense counsel contradicted him. Stockman provides no context for this allegation, no citation to the record, no authority supporting his argument, and no explanation as to how this alleged "contradict[ion]" constituted deficient performance and prejudiced him under *Strickland*. His vague and meritless claim should be rejected as conclusory. *Reed*, 719 F.3d at 374.

XLIV. "Presenting inconsistent defenses" (Mot. at 20)

This claim is utterly conclusory. Stockman does not even identify what "defenses" he believes to have been "inconsistent." He provides no citation to the record, no authority supporting his argument, and no explanation as to how this alleged presentation of inconsistent defenses constituted deficient performance and prejudiced him under *Strickland*. To the contrary, the record of this case affirmatively establishes that Stockman was represented by able counsel who aggressively pursued his interests at every turn. Even if counsel had presented inconsistent defenses, this would have made no difference to the outcome of the case given the

overwhelming evidence of Stockman's guilt. Stockman's vague and meritless claim should be rejected. *Reed*, 719 F.3d at 374.

XLV. <u>"Promising jury that Defendant would testify" (Mot. at 20)</u>

Finally, Stockman alleges that his counsel provided ineffective assistance by telling "the jury that Defendant would testify," and that when he did not do so, "the jury believed he was hiding something." This allegation should be rejected as conclusory. *Reed*, 719 F.3d at 374. Stockman provides no citation to the record establishing that any of his attorneys ever told the jury that he would testify. Undersigned counsel has reviewed the transcript of the defense's opening statement and has not identified any statement by counsel that Stockman would testify. (T. Tr. I (Opening Statements), R. Doc. 276, at 59-69.) Because Stockman has failed to cite any record evidence or other authority supporting his claim, it should be rejected.

Furthermore, Stockman has failed to show deficient performance and prejudice under *Strickland*. Stockman himself made the knowing and voluntary decision not to testify after observing the remainder of the evidence in his trial, as is his right. (T. Tr. XI, R. Doc. 286, at 33.) The Court instructed the jury that "no inference whatever may be drawn from the defendant's election not to testify." (T. Tr. (Final Jury Instructions), R. Doc. 396, at 12, 15.) *See also United States v. Patino-Prado*, 533 F.3d 304, 313 (5th Cir. 2008) (per curiam) ("We will presume that jurors understand and follow their instructions . . . ."). Even if defense counsel had promised the jury that Stockman would testify—and, again, Stockman cites no such promise in the record—Stockman's conclusory assertion of error would still be insufficient to show ineffective assistance or justify an evidentiary hearing. *See Klein v. United States*, No. H-06-56, 2014 WL 12855826 (S.D. Tex. Mar. 28, 2014), at *3-5 (denying § 2255 motion without a

hearing where defendant claimed ineffective assistance based on counsel's promise to jury that defendant would testify, noting that the defendant "does not provide any details regarding this decision," that the defendant was present during opening statements yet waived his right to testify, and that "[t]here is no presumption of prejudice when a promise made in an opening statement that the defendant would testify is not fulfilled"). In any event, Stockman cannot establish prejudice here given the overwhelming evidence of his guilt.

## CONCLUSION

"[A] final judgment commands respect." *Frady*, 456 U.S. at 165. Stockman's unsupported and conclusory allegations fall far short of establishing that the final judgment against him should be set aside. For the foregoing reasons, the United States requests that the Court deny without a hearing Stockman's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

Dated: December 10, 2021

Respectfully submitted,

JENNIFER LOWERY
Acting United States Attorney

Suzanne Elmilady
Assistant United States Attorney

COREY R. AMUNDSON
Chief, Public Integrity Section

Robert J. Heberle
Deputy Chief

By: /s/ *Robert J. Heberle*
Robert J. Heberle
Deputy Chief
Public Integrity Section
Criminal Division
United States Department of Justice
1301 New York Avenue NW
Washington, DC 20530
Telephone: (202) 514-1412
E-mail: robert.heberle@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on December 10, 2021, I provided a copy of this Opposition to all parties via the ECF system. I further certify that I will cause a copy of this filing to be sent to the defendant's last known legal address, as set forth in the presentence report in this case.

/s/ *Robert J. Heberle*
Robert J. Heberle