United States District Court
Southern District of Texas
**ENTERED**
December 30, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-17-116-2 |
| | § | CIVIL ACTION NO. H-21-3239 |
| | § | |
| STEPHEN E. STOCKMAN | § | |

# MEMORANDUM AND OPINION DENYING 28 U.S.C. § 2255 MOTION

Stephen E. Stockman, representing himself, has filed a motion under 28 U.S.C. § 2255, challenging his 2018 convictions for 23 counts of mail fraud, wire fraud, conspiracy to make conduit campaign contributions and false statements, making false statements to the Federal Election Commission, causing excessive campaign contributions, money laundering, and filing a false tax return. (Docket Entry No. 492). The government opposes any relief, asserting that many of Stockman's claims are procedurally barred and the remainder do not allege facts sufficient to entitle Stockman to an evidentiary hearing. (Docket Entry No. 495). The court denies relief. The reasons are set out below.

## I. Background

A federal grand jury returned a 24-count superseding indictment against Stockman in March 2017. (Docket Entry No. 23). After extensive pretrial proceedings, the court held a 4-week jury trial. The Fifth Circuit summarized the trial evidence as follows:

> Stockman served two nonconsecutive terms in the United States House of Representatives, first from 1995 to 1997 and then from 2013 to 2015. During his first term, Stockman began working with an organization called the "Leadership Institute," where he became acquainted with Jason Posey and Thomas Dodd, two members of its staff. His relationships with these two men would grow and then wither. Stockman employed Posey and Dodd as campaign staffers, congressional aides, and business consultants. Their most recent roles were as witnesses against Stockman.

Posey and Dodd worked with Stockman to raise money for various "nonprofit" entities between 2010 and 2014, the period in which Stockman is alleged to have orchestrated a criminal scheme to obtain charitable donations under false pretenses and to then enrich himself with the proceeds. Though initially named as codefendants, Posey and Dodd abandoned Stockman, pleaded guilty, and testified against him. Their testimony helped reveal the details of the scheme, which unfolded in four parts, targeted two donors, and ultimately netted over a million dollars for Stockman and his aides.

**The 2010 Rothschild Donations**

Stockman's scheme began in May 2010, when Stockman and Dodd started soliciting Stanford Z. Rothschild, Jr., an elderly donor acting through his foundation. Over the next five months, Stockman and Dodd managed to persuade Rothschild to donate $285,000 to the Ross Center, a Section 501(c)(3) nonprofit organization under Stockman's control. Rothschild was told that his money would fund "voter education material" for Jewish voters in Florida. Dodd testified that "voter education material[s]" are print publications that "educate voters in the general public about public policy positions and public policy issues." Specifically, Rothschild was pitched on a book about radical Islam that would be mailed to voters in the lead-up to the 2010 midterm elections.

The deal was finalized only after Stockman assured Rothschild that his money "was to be spent for public policy [and] voter education that was 100 percent compliant with 501(c)(3) rules." With this reference to the "501(c)(3) rules," Stockman appears to have promised that he would spend Rothschild's money primarily (if not exclusively) in furtherance of the educational goals laid out in the pitch. *See* 26 U.S.C. § 501(c)(3) (tax-exempt organizations must be operated "exclusively for ... charitable ... or educational purposes").

But this promise soon vanished. Instead of "voter education materials," Stockman spent the 2010 Rothschild funds charitably on himself, educating himself at Disneyland and other amusement parks, at spas, and riding in hot air balloons. Stockman's charity to himself was generous; it further included paying his business expenses, including an abortive venture in South Sudan on which Stockman spent about $13,000 of the 2010 Rothschild funds. Stockman made the trip to South Sudan hoping to win a lucrative lobbying contract with a "performance bonus" that would allow him to take a percentage of any foreign aid appropriated by Congress. Stockman failed to mail any "voter education material" as promised.

**The 2011–2012 Rothschild Donations**

Stockman and Dodd were not finished with Rothschild. In 2011, Stockman decided to run for a second term in Congress. This time, rather than pitch a "voter education" project aimed at indirectly influencing elections, Stockman and Dodd

requested a loan for Stockman's campaign. Rothschild refused. Instead, he agreed to give in the same manner as before, *i.e.*, to "mak[e] donations from his foundation ... to be used for voter education in accordance with the 501(c)(3) rules." Stockman again promised to honor Rothschild's wishes, so Rothschild made another series of large donations, this time totaling $165,000, to the Ross Center and Life Without Limits (another Stockman-controlled nonprofit entity).

As before, Stockman repurposed the funds. He spent thousands on personal goods, including airline tickets, fast food, and gasoline. He also diverted 80% of a $100,000 donation to his congressional campaign account. It was later reported to the Federal Election Commission (FEC) that this deposit was a personal loan from Stockman to his own campaign.

Stockman agrees that most of the 2011–2012 Rothschild funds were, in the words of his brief, "transferred to other accounts controlled by Stockman, including the account for his campaign committee." Stockman nevertheless reported in a letter to Rothschild that the funds had "helped [Life Without Limits] educate many people last year in traditional American values." The nature of those "values" was not described.

**The 2013 Uihlein Donation**

In January 2013, Stockman, now a member of Congress, shifted his attention to Richard Uihlein, a Wisconsin businessman whose foundation has donated millions of dollars to nonprofit organizations that share his conservative values. Stockman and Dodd pitched Uihlein on "Freedom House," a prospective residential facility in Washington, D.C. that would house interns and provide a home base for a non-existent nonprofit called the "Congressional Freedom Foundation." Uihlein agreed to endow the project with $350,000 in seed money. The seed was not planted as promised, and the project died in silence. But the seed money survived to promote a new development in Stockman's political career: he had decided to run for the United States Senate in 2014.

Thus, as with the Rothschild donations, Stockman used the 2013 Uihlein funds to meet his personal and (especially) his political needs. For example, Stockman spent over $40,000 on a plan to surveil a conservative Texas politician whom Stockman believed to be a likely opponent in a future primary. Stockman also gave thousands of dollars to his cohorts, Dodd and Posey, so that they, in turn, could "donate" the money to Stockman's Senate campaign; the donations were falsely attributed to Dodd's mother and Posey's father in FEC filings. In sum, the 2013 Uihlein donation was spent in a long sequence of varying expenditures, including $5,000 to pay the rent on Stockman's campaign office, more than $30,000 to pay off Dodd's credit card debt, and over $20,000 to patronize a publishing business owned by Stockman's brother.

> Posey testified that no money was actually spent on the project pitched to Uihlein. Even Stockman agrees that no property was ever acquired for such a project. Nonetheless, Stockman's team reported to Uihlein that his generosity had allowed Life Without Limits to support Freedom House. The 2014 letter that makes this claim also goes on to advise Uihlein that his "continued support is crucial to our mission."
>
> **The 2014 Uihlein Donation**
>
> By early 2014, Stockman was in the midst of his primary challenge to incumbent United States Senator John Cornyn. Stockman met with Kurt Wagner, the president of a direct mail company, and the two men discussed Stockman's plan to mail Texas voters a faux newspaper called *The Conservative News* on the eve of the Republican primary. *The Conservative News* accuses Senator Cornyn of "falsifying ethics reports to hide income," "lying to voters," and filing "false donor reports at least 121 times." By contrast, *The Conservative News* takes care to highlight Stockman's policy positions and legislative actions with bold headlines like "Stockman Kills Cornyn-Backed Senate Amnesty Bill" and "Stockman's Sanctity of Life Act Overturns *Roe v. Wade*."
>
> To finance this direct mail campaign, Stockman instructed Wagner to seek a new donation from Uihlein. Posey also called Uihlein to help induce a donation. Stockman dictated some of the contents of a solicitation letter but told Wagner that the letter would "need[ ] to come from somebody else, not [Stockman] directly." The letter, which purported to seek financing for an independent expenditure by the "Center for the American Future," induced Uihlein to give $450,571.65. Uihlein testified that he would not have donated the money if he had known of Stockman's involvement. Posey testified that the Center for the American Future was under Stockman's control.
>
> The 2014 Uihlein funds were used to print and distribute hundreds of thousands of copies of *The Conservative News.* Stockman called off the direct mail campaign shortly before the primary, at which point only $214,718.51 remained of Uihlein's 2014 donation. At Stockman's direction, Posey proceeded to use these remaining funds to pay bills related to Stockman's Senate campaigns, including both his Texas campaign and a prospective campaign in Alaska. Posey also testified that Stockman instructed him to flee to Egypt with some of the remaining funds, using them to pay for flights and other travel expenses.

*United States v. Stockman*, 947 F.3d 253, 255-58 (5th Cir.), *cert. denied*, 141 S. Ct. 369 (2020) (footnotes omitted).

At the close of the government's case, the close of all evidence, and again postverdict, the court denied Stockman's motions for judgment of acquittal. (Docket Entry Nos. 395, pp. 115-29;

286, p. 34; 269). After the jury found Stockman guilty of 23 of the 24 counts, the court sentenced him to ten years in prison and three years of supervised release and ordered him to pay $1,014,718.51 in restitution. (Docket Entry No. 329). Stockman's convictions and sentences were affirmed on direct appeal. *See Stockman*, 947 F.3d at 255. Stockman's sentence was later commuted to time served, but the commutation left "intact and in effect the remaining three-year term of supervised release with all its conditions, the unpaid balance of his $1,014,718.51 restitution obligation, if any, and all other components of the sentence." (Docket Entry No. 485-1).

Stockman has now filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, raising 45 separate grounds for relief. (Docket Entry No. 492). The government filed a response in opposition. (Docket Entry No. 495).

## II. The Applicable Legal Standards

To obtain collateral relief under 28 U.S.C. § 2255, the defendant "must clear a significantly higher hurdle" than that applicable to direct appeal. *United States v. Frady,* 456 U.S. 152, 166 (1982). Once a direct appeal is concluded, the court is "entitled to presume that the defendant stands fairly and finally convicted." *Id.* at 164. "As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 973 F.2d 228, 231-32 (5th Cir. 1991) (en banc)). A defendant must also show cause and prejudice to be entitled to raise a claim for an alleged trial error to which no contemporaneous objection was made. *See Frady*, 456 U.S. at 167. "Cause" in this context occurs when "'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances."

*United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (quoting *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992)). "Actual prejudice" occurs when errors at trial "worked to [the defendant's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady,* 456 U.S. at 170. The cause-and-prejudice standard does not apply to claims that could not have been raised on direct appeal, such as ineffective assistance of counsel claims, "since no opportunity existed [before the district court] to develop the record on the merits of the allegations." *United States v. Higdon,* 832 F.2d 312, 313-14 (5th Cir. 1987); *see also Massaro v. United States,* 538 U.S. 500, 504 (2003) (ineffective assistance claims are properly raised on collateral review).

Under § 2255(b), a defendant is generally entitled to an evidentiary hearing on his claims unless the motion and record conclusively show that he is not entitled to relief. *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam). To be entitled to an evidentiary hearing, the defendant must "produce[] independent indicia of the likely merit of [his] allegations." *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008). Neither conclusory allegations nor "speculative and unsupported accusations of government wrongdoing [will] entitle a defendant to an evidentiary hearing." *United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013). And if the defendant fails to meet his burden of proof at the pleadings stage, an evidentiary hearing is unnecessary. *See Cervantes*, 132 F.3d at 1110; *see also Sanders v. United States*, 373 U.S. 1, 21 (1963) (noting that § 2255 does not require the court to hold an evidentiary hearing "no matter how vague, conclusory, or palpably incredible his allegations may be"); *United States v. Fields*, 565 F.3d 290, 298 (5th Cir. 2009) ("The district court need not hold an evidentiary hearing to resolve ineffective assistance claims where the petitioner has failed to allege facts which, if proved, would admit of relief." (quoting *Clark v. Collins,* 19 F.3d 959, 964 (5th Cir. 1994)).

Because Stockman is representing himself, his pleadings are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted). The court will liberally construe his filings. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972) (per curiam). But even unrepresented litigants must provide sufficient facts to support their claims. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (per curiam). While a *pro se* defendant is entitled to have his or her pleadings liberally construed, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)). "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . to be of probative evidentiary value." *Ross*, 694 F.2d at 1011.

## III. Analysis

In his § 2255 motion, Stockman raises one claim of prosecutorial misconduct, 43 claims of ineffective assistance of trial counsel, and one claim of ineffective assistance of appellate counsel. These claims are addressed in turn.

### A. Prosecutorial Misconduct (Ground 1)

Stockman asserts in his first claim that he was denied due process because "the government was allowed to weave a tale that went well beyond the actual charges . . . and did so in order to prejudice the jury against Defendant as well as confuse the jury." (Docket Entry No. 492, p. 11). The claim of prosecutorial misconduct was not raised at trial or in Stockman's direct appeal, and he has not alleged any facts in his motion showing cause and prejudice for his failure to pursue this claim in earlier proceedings. This claim is procedurally barred. *See Frady,* 456 U.S. at 167

(a defendant must show cause and prejudice before raising a claim for an unpreserved trial error for the first time in a § 2255 motion).

Even if the court could overlook this procedural bar, Stockman's allegations are insufficient to state a claim for a constitutional violation. Stockman alleges that the government "focused on alleged charitable contribution and election law violations that were not part of the charges," "knowingly misrepresented the evidence as to what a non-profit organization could do and what it could spend," "misrepresented evidence relating to Rothschild's intent as to his donations through impermissible hearsay," confused Uihlein, the primary witness against him, "by telling him a false scenario about what funds were used for," and "intentionally failed to state what the actual crimes were such that the Defendant was not fully aware of what the crimes charged contained." (Docket Entry No. 492, p. 11). Stockman also alleges that "[t]hroughout trial, the government repeatedly referred to 'sham nonprofits,' 'bogus charities,' 'sham charities,' and 'shell entity.'" (*Id.* at 11-12). But Stockman points to no specific statements or arguments in the record to support these allegations, and the court is not obligated to search the record for evidence that might support his claim. *See Perez v. Johnson,* 122 F.3d 1067, 1997 WL 464599, at *1 (5th Cir. Oct. 14, 1997) (per curiam) (citing *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994)) (courts are not required "to scour the record for factual issues that might support a *pro se* litigant's position; it is that litigant's obligation to direct the court's attention to the relevant evidence"), *cert. denied sub nom. Garcia Perez v. Johnson*, 523 U.S. 1008 (1998). Even if the claim was not procedurally barred, Stockman is not entitled to relief based on his conclusory and unsupported allegations.

Finally, even considering the comments Stockman identifies, he is not entitled to relief. When a federal habeas court reviews a due process claim based on prosecutorial misconduct, the

court must determine whether the challenged comments were so egregious as to render the trial fundamentally unfair. *See Donnelly v. DeChristoforo,* 416 U.S. 637, 645 (1974). "A trial is fundamentally unfair if 'there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'" *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (quoting *Foy v. Donnelly,* 959 F.2d 1307, 1317 (5th Cir. 1992)); *see also Felde v. Blackburn,* 795 F.2d 400, 403 (5th Cir. 1986) (to warrant federal habeas relief based on a prosecutor's improper comments, the petitioner must show "either persistent and pronounced misconduct or that the evidence against him was so insubstantial that (in probability) but for the remarks no conviction would have occurred"). Relief is appropriate only if the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *DeChristoforo*, 416 U.S. at 643.

As the government points out in its opposition to Stockman's motion, Stockman did not deny on appeal that certain funds were misappropriated after they were donated. (Docket Entry No. 495, p. 10 (citing *Stockman*, 947 F.3d at 264)). And the Fifth Circuit concluded on direct appeal that the government "provided ample evidence" to support the charges and convictions. *Stockman*, 947 F.3d at 263-64. The record does not show that the prosecutor acted improperly or that the trial was infected with unfairness. There is no reasonable probability that the result of the trial would have been different but for the challenged remarks and evidence. Stockman is not entitled to relief on his claim for prosecutorial misconduct. It is denied.

**B. Ineffective Assistance of Counsel**

Stockman's remaining 44 claims allege ineffective assistance of trial and appellate counsel. To prevail on an ineffective assistance of counsel claim, whether at trial or on appeal, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness; and

(2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of the *Strickland* test requires the defendant to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. Reasonableness is measured against prevailing professional norms and is viewed under the totality of the circumstances. *Id.* at 688. The second prong of the *Strickland* test requires the defendant to show that "it is reasonably likely the result would have been different," if not for counsel's deficient performance. *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (internal quotation marks omitted).

Under both prongs, judicial scrutiny is highly deferential, and the defendant must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. A strong presumption exists that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). To overcome the presumption, the defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. To establish prejudice, the defendant must show that, absent counsel's deficient performance, the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Constitutionally effective assistance of counsel under *Strickland* is not errorless assistance of counsel.

As with any other claim raised in a § 2255 motion, the defendant may not rely on conclusory allegations to obtain a hearing. Instead, the defendant must point to "independent indicia of the likely merit of [his] allegations" to be entitled to a hearing. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006); *see also Fields*, 565 F.3d at 298 ("The district court need not hold an evidentiary hearing to resolve ineffective assistance claims where the petitioner has failed to allege facts which, if proved, would admit of relief."). Neither conclusory allegations nor "speculative and unsupported accusations of government wrongdoing" are sufficient to entitle a defendant to an evidentiary hearing. *Reed*, 719 F.3d at 373-74. When the defendant offers nothing but conclusory allegations, an evidentiary hearing is unnecessary and relief is not warranted. *See Cervantes*, 132 F.3d at 1110.

#### 1. "One-liner" Claims (Grounds 10, 13, 14, 15, 16, 30, 32, 40, 42, 43, 44)

Eleven of Stockman's ineffective assistance of counsel claims consist of a single conclusory sentence with no factual or legal support. These claims are:

"Failure to file motions as directed by Defendant." (Claim 10).

"Failure to respond to a government's pre-trial motion." (Claim 13).

"Failure to properly preserve pretrial and trial objections." (Claim 14).

"Failure to provide Defendant his case files and records." (Claim 15).

"Failure to conduct a proper investigation." (Claim 16).

"Failure to present claims of double jeopardy." (Claim 30).

"Failure to submit proper jury instructions." (Claim 32).

"Failure to preserve multiplicitous and duplicitous arguments." (Claim 40).

"Defense counsel appearing to concede guilt." (Claim 42).

"Defendant [sic] contradicting their client." (Claim 43).

"Presenting inconsistent defenses." (Claim 44).

(Docket Entry No. 492, pp. 14-20). Stockman does not show where in the record there is any support for his allegations. He does not explain how these alleged failures by counsel constitute deficient performance. Nor does he point to any facts showing prejudice. These unsupported and conclusory allegations do not entitle Stockman to either an evidentiary hearing or relief. *See Fields*, 565 F.3d at 298. These claims are denied without further discussion.

**2. Failure to object to jury instructions on Count 12 (Ground 2)**

In claim 2, Stockman alleges that trial counsel provided ineffective assistance by failing to object to an incorrect jury instruction on Count 12 of the indictment, which charged Stockman with making or causing to be made excessive contributions to his campaign committee. The record does not support his claim.

The record shows that trial counsel specifically objected to the proposed jury instruction on Count 12 and offered alternate language. (Docket Entry Nos. 286, pp. 59-62; 396, p. 3). The court overruled counsel's objection and denied counsel's request for a different instruction. Counsel's performance cannot be deficient for failing to make an objection that counsel actually made.

In addition, Stockman has not alleged facts showing prejudice. And any allegation of prejudice he might have made would be conclusively refuted by the Fifth Circuit's determination that the jury instructions were correct. *See Stockman*, 947 F.3d at 258-62.

Stockman is not entitled to either an evidentiary hearing or relief on this claim. *See Reed*, 719 F.3d at 373-74. It is denied.

**3. Failure to object to the indictment (Ground 3)**

In claim 3, Stockman alleges that trial counsel failed "to pursue and preserve objections to [the] failure of the indictment to make a proper statement of the crime." (Docket Entry No. 492, p. 12). As with claim 2, the record conclusively refutes Stockman's allegation of deficient performance. The record shows that counsel filed detailed pretrial motions to dismiss all of the counts of the indictment. (Docket Entry Nos. 92, 93, 94, 95). In addition, trial counsel moved to have "prejudicial surplusage" stricken from the indictment. (Docket Entry No. 96). These motions contradict Stockman's allegation that counsel failed to challenge the indictment.

In addition, Stockman points to no defects in the indictment that support a conclusion that the motions to dismiss should have been granted. Counsel is not required to make futile motions or objections and is not ineffective for failing to do so. *See, e.g., Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (citing *Clark*, 19 F.3d at 966, and *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)).

Stockman makes only conclusory and unsupported allegations and fails to direct the court to any "independent indicia of the likely merit of [his] allegations." *Edwards*, 442 F.3d at 264. He is not entitled to a hearing or relief. This claim is denied.

**4. Failure to properly present and object to evidence and instructions on 501(c)(3) and 501(c)(4) entities. (Ground 4)**

In claim 4, Stockman alleges that trial counsel was ineffective for failing to object to the government's evidence on the operation of 501(c)(3) and 501(c)(4) entities and for failing to present evidence on the proper operation of these types of entities. Stockman does not identify the allegedly incorrect evidence that the government introduced. Nor does he identify the "proper" evidence that he believes counsel should have offered but did not. In the absence of such

allegations, Stockman's motion is insufficient to establish deficient performance, and he is not entitled to a hearing or relief. *See Reed*, 719 F.3d at 373-74; *Cervantes*, 132 F.3d at 1110. This claim is denied.

**5. Failure to request a special verdict form (Ground 5)**

In claim 5, Stockman alleges that trial counsel was ineffective for failing to request a special verdict form. (Docket Entry No. 492, p. 13). He asserts that "the jury was clearly confused" and that counsel's failure to request a special verdict form "prevented appellate counsel from raising certain issues about what the jury relied upon." (*Id.*).

The Federal Rules of Criminal Procedure do not expressly provide for special verdict forms, and "a general jury verdict [is] valid so long as it [is] legally supportable on one of the submitted grounds—even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action." *Griffin v. United States,* 502 U.S. 46, 49 (1991). Because the general verdict form used in this case was presumptively valid, Stockman cannot show that counsel's failure to request a special verdict form constituted deficient performance. He does not explain why he believes the jury was confused; he does not identify the issues that should have been addressed in a special verdict form; he does not explain how a special verdict form would have eliminated the alleged confusion; and he does not identify the issues that might have been preserved for appeal by the use of a special verdict form. His allegations fail to show that counsel's performance was deficient.

Nor does Stockman allege facts tending to show a reasonable probability that the court would have granted a request for a special verdict form had the request been made or that the outcome would have been different if one been used. In the absence of these allegations, Stockman cannot show that he was prejudiced by counsel's alleged failure, particularly given the Fifth

Circuit's holding that "overwhelming evidence" supported the verdict. *See Stockman,* 947 F.3d at 264.

Stockman's conclusory allegations about a special verdict form are insufficient to entitle him to either a hearing or relief. *See Reed*, 719 F.3d at 373-74; *Cervantes*, 132 F.3d at 1110. This claim is denied.

**6. Failure to pursue a "good faith" defense (Ground 6)**

In claim 6, Stockman asserts that trial counsel provided ineffective assistance by pursuing a "good faith" defense on only one of the multiple counts, alleging that counsel should have called additional witnesses who advised Stockman about his actions and should have requested an instruction on the "good faith" defense as to all counts. (Docket Entry No. 492, p. 13).

"To prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). But in his motion, Stockman does not identify what witnesses counsel should have called, what they would have testified to had they been called, which counts would have been affected by their testimony, and how the testimony would have been favorable to his defense. Conclusory allegations about counsel's alleged failure to call unidentified witnesses to testify to unidentified facts about unidentified subjects are insufficient to establish either deficient performance or prejudice. Stockman's allegations about uncalled witnesses are insufficient to warrant either a hearing or relief.

As to his claim that counsel should have requested a "good faith" jury instruction as to all counts, Stockman's claim fails because he does not identify the counts to which a good faith

defense would have been applicable. Nor does he identify any facts showing that the instruction would have been given had it been requested. Indeed, the Fifth Circuit specifically rejected Stockman's claim that he was entitled to a "good faith" instruction on counts 10, 11, 12, and 28. *See Stockman*, 947 F.3d at 262 (the trial court's refusal to give a "good faith" instruction on these counts was not erroneous). Stockman cannot have suffered prejudice by counsel's failure to request a jury instruction to which Stockman was not entitled.

Stockman's conclusory allegations are insufficient to warrant either a hearing or relief. *See Reed*, 719 F.3d at 373-74; *Cervantes*, 132 F.3d at 1110. This claim is denied.

### 7. Failure to call an expert on election law and campaign expenditures (Ground 7)

In claim 7, Stockman alleges that trial counsel provided ineffective assistance by failing to call an expert witness on election law, campaign expenditures, and a 501(c)(4)'s ability to send certain mailings. Stockman argues that the court had granted him leave to call an expert and that, had such an expert been called, he could have corrected the government's "misleading and legally incorrect arguments as to permissible activities." (Docket Entry No. 492, p. 14). While Stockman does not identify the witness in his motion, he appears to be referring to David A. Warrington, who was identified before trial as a potential expert witness on fundraising issues.

But Stockman's allegations of deficient performance are contradicted by the record. Before trial, the court held a *Daubert*[1] hearing concerning Mr. Warrington's proposed testimony and ruled that he could not testify about the meaning, applicability, or application of rules and regulations because those were matters of law to be addressed solely by the court. (Docket Entry Nos. 168, pp. 43-44; 274, pp. 25-29). Under the court's ruling, Mr. Warrington could not have "corrected" the government's "misleading and legally incorrect arguments," as Stockman

[1]*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

suggests. Counsel's performance is not deficient for failing to call a witness to testify in a manner the court has disallowed. Because the court would not have permitted the testimony Stockman alleges might have been beneficial, he cannot show that counsel was ineffective or that counsel caused him prejudice.

Stockman's allegations of deficient performance are conclusively refuted by the record. He has not directed the court to any "independent indicia of the likely merit of [his] allegations" so as to be entitled to a hearing or relief. *Edwards*, 442 F.3d at 264. This claim is denied.

### 8. Failure to object to misstatements by the prosecutor (Ground 8)

In claim 8, Stockman alleges that trial counsel provided ineffective assistance by failing to object to the government's "repeated misstatements of fact and law throughout" the trial. (Docket Entry No. 492, p. 14). But Stockman does not identify a single misstatement or improper argument in the record that supports his claim, and the court is not obligated to search the record for evidence that might support these conclusory allegations. *See Perez,* 1997 WL 464599, at *1 (courts are not required to "scour the record for factual issues that might support a *pro se* litigant's position; it is that litigant's obligation to direct the court's attention to the relevant evidence"). Because Stockman does not identify any allegedly improper statements or arguments, he does not show that any prejudice arose from them. His conclusory and unsupported allegations do not entitle him to either an evidentiary hearing or relief. *See Reed*, 719 F.3d at 369. This claim is denied.

### 9. Failure to argue that there was no defrauded donor (Grounds 9 & 24)

In two claims, Stockman alleges that trial counsel provided ineffective assistance by failing to argue that because neither donor was actually defrauded, there could not have been a "fraudulent scheme" as argued by the government. (Docket Entry No. 492, pp. 14, 16-17). He also alleges

that trial counsel failed to "properly" argue that the donors could not have been defrauded because their donations were used for legal nonprofit purposes. (*Id.* at 17). These claims are refuted by the record.

In both opening statements and closing arguments, trial counsel specifically argued that neither Rothchild nor Uihlein were defrauded by Stockman or his codefendants. (Docket Entry Nos. 276, pp. 59-69; 220, pp. 43-107). These arguments flatly contradict Stockman's assertion in claim 9 that trial counsel failed to make such an argument. Counsel's performance is not deficient for failing to make an argument that counsel in fact actually made.

In claim 24, Stockman alleges that the government was "permitted to present false evidence and make improper arguments" that the donors were defrauded because trial counsel did not "provide appropriate law and facts." But Stockman does not identify what the "proper" arguments were that counsel should have made, nor does he explain how such arguments would have counteracted the weight of the government's evidence that the donated funds were improperly diverted from the nonprofits Stockman controlled into his campaign accounts.

Having failed to direct the court to any "independent indicia of the likely merit of [his] allegations," *Edwards*, 442 F.3d at 264, Stockman is not entitled to either a hearing or relief on these claims. These claims are denied.

### 10. Failure to present evidence on primary vs. exclusive use of funds (Ground 11)

In claim 11, Stockman argues that trial counsel provided ineffective assistance by failing "to present to the jury evidence and law to show the primary v. exclusive use of funds for charitable purposes," failing to present expert testimony on this issue, and failing to request basic jury instructions to address this evidence. (Docket Entry No. 492, p. 14). But Stockman does not identify what evidence counsel should have presented, which experts should have been called to

offer testimony, what those experts would have testified to, or what jury instructions should have been requested. Stockman's conclusory and unsupported allegations do not entitle him to either a hearing or relief. *See Reed*, 719 F.3d at 373-74; *Cervantes*, 132 F.3d at 1110; *see also Fields*, 565 F.3d at 298 ("The district court need not hold an evidentiary hearing to resolve ineffective assistance claims where the petitioner has failed to allege facts which, if proved, would admit of relief."). This claim is denied.

#### 11. Failure to pursue a defense based on improper political retribution (Grounds 12, 18, & 36)

In three claims, Stockman alleges that trial counsel provided ineffective assistance by failing to pursue a defense based on political bias and retribution. In claim 12, Stockman contends that trial counsel failed to request emails between Lois Lerner and other IRS personnel and the Department of Justice that allegedly would have shown that there was "targeted political bias" toward Stockman. (Docket Entry No. 492, p. 15). He contends that "political prosecutions are unlawful" and that counsel's failure to obtain this evidence was prejudicial. (*Id.*) In claim 18, Stockman alleges that counsel should have "challenge[d] the prosecution as simply a political prosecution" or political retaliation. (*Id.* at 15-16). In claim 36, he contends that trial counsel failed to pursue a political retribution defense by failing to obtain discovery and failing to cross-examine Lerner and her staff about her retaliatory conduct and bias. (*Id.* at 19).

The record shows that counsel did attempt to raise the issue of political retaliation and selective prosecution at trial, but the trial court sustained the government's objections to this line of inquiry. (Docket Entry No. 277, pp. 6-10). In addition, Stockman fails to point to admissible evidence that there was any "targeted political bias" toward him. Having offered no factual basis to believe that political motivation and retaliatory bias existed, or that any admissible evidence existed that would document this motivation or bias, Stockman is not entitled to relief. *See*

*Edwards*, 442 F.3d at 264 (a hearing is not necessary when the defendant does not point to "independent indicia of the likely merit of [his] allegations"). Stockman's "speculative and unsupported accusations of government wrongdoing [will not] entitle a defendant to an evidentiary hearing." *Reed*, 719 F.3d at 373-74. These claims are denied.

**12. Failure to present evidence uncovered by a private investigator (Ground 17)**

In claim 17, Stockman alleges that trial counsel provided ineffective assistance by failing to provide him with the evidence uncovered by a private investigator and by failing to present evidence from this private investigator "regarding witnesses [sic] false or misleading testimony." (Docket Entry No. 492, p. 15). But Stockman fails to identify the private investigator, fails to identify which witnesses were investigated, and offers no evidence to show that this private investigator discovered that any witness gave false or misleading testimony.

Without "independent indicia of the likely merit of [his] allegations," *Edwards*, 442 F.3d at 264, Stockman's speculative accusations of wrongdoing do not entitle him to an evidentiary hearing or relief. *Reed*, 719 F.3d at 373-74. This claim is denied.

**13. Failure to properly cross-examine witnesses (Ground 19)**

In claim 19, Stockman alleges that trial counsel provided ineffective assistance of counsel by failing to properly cross-examine witnesses, particularly codefendant Posey, to show that the witnesses' testimony conflicted. (Docket Entry No. 492, p. 16). The record conclusively refutes Stockman's allegation of deficient performance because it shows that counsel cross-examined Posey extensively. (Docket Entry Nos. 205, pp. 208-54; 238, pp. 5-55, 72-74, 77). And Stockman's failure to identify specific deficiencies in Mr. Posey's cross-examination or other witnesses inadequately cross-examined make his allegations conclusory and insufficient to support

a claim for relief. Stockman has failed to direct the court to any "independent indicia of the likely merit of [his] allegations" so as to be entitled to a hearing or relief. *Edwards*, 442 F.3d at 264. This claim is denied.

**14. Failure to interview witnesses before trial (Ground 20)**

In claim 20, Stockman asserts that trial counsel provided ineffective assistance by failing to interview any witnesses before trial, resulting in counsel being unprepared to challenge their testimony at trial. (Docket Entry No. 492, p. 16). But Stockman fails to identify any specific witness that counsel failed to interview, nor does he indicate how the witnesses' testimony or cross-examination would have been different had counsel interviewed them. These conclusory and unsupported allegations of wrongdoing do not show either that counsel was deficient or that Stockman was prejudiced. Stockman has failed to direct the court to any "independent indicia of the likely merit of [his] allegations" so as to be entitled to a hearing or relief. *Edwards*, 442 F.3d at 264. This claim is denied.

**15. Failure to challenge the court's striking of witnesses (Ground 21)**

In claim 21, Stockman alleges that trial counsel provided ineffective assistance by failing to object to or otherwise challenge the court's ruling striking certain witnesses, which he contends resulted in his inability to defend himself. (Docket Entry No. 492, p. 16). Stockman does not identify any specific witness who was stricken or explain how that witness's testimony would have resulted in a different outcome at trial. These conclusory and unsupported allegations do not show either that counsel's performance was deficient or that Stockman was prejudiced. These allegations are insufficient to entitle him to either a hearing or relief. *See Reed*, 719 F.3d at 373-74; *see also Fields*, 565 F.3d at 298 ("The district court need not hold an evidentiary hearing to

resolve ineffective assistance claims where the petitioner has failed to allege facts which, if proved, would admit of relief.”). This claim is denied

**16. Failure to file a motion to dismiss concerning how donations were used (Ground 22)**

In claim 22, Stockman alleges that trial counsel provided ineffective assistance by failing to file a motion to dismiss to challenge the government’s claim “that the donations were going to the campaign.” (Docket Entry No. 492, p. 16). But a factual dispute concerning whether Stockman’s use of the donated funds was proper is not a valid basis for a motion to dismiss. *See United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (a motion to dismiss an indictment is proper when “the infirmity in the prosecution is essentially one of law” rather than one of fact) (quoting *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005)). Having failed to direct the court to any “independent indicia of the likely merit of [his] allegations” so as to be entitled to a hearing, *Edwards*, 442 F.3d at 264, Stockman is not entitled to relief. This claim is denied.

**17. Failure to challenge the government’s evidence on bank accounts (Ground 23)**

In claim 23, Stockman alleges that trial counsel provided ineffective assistance by failing to “call into question the legitimacy of the government’s contention that Wells Fargo accounts were opened by the Defendant.” (Docket Entry No. 492, p. 16). The evidence presented at trial reflects that Stockman personally opened numerous accounts with Wells Fargo, and testimony established that numerous additional accounts were opened at his direction. (Docket Entry Nos. 229-11; 205, pp. 69, 83). Stockman does not identify which accounts he believes counsel should have challenged. Nor does he offer evidence showing that only the person who opened the account could control the funds in it. He has alleged no facts to show that any challenge to the ownership or control of these accounts would have been successful or to show a reasonable probability that,

had counsel raised such a challenge, the result of the proceeding would have been different. Stockman is not entitled to a hearing or relief on this claim. *See Reed*, 719 F.3d at 373-74. This claim is denied.

**18. Failing to argue that the evidence was legally insufficient to prove fraud (Ground 25)**

In claim 25, Stockman alleges that trial counsel provided ineffective assistance by failing to argue that the evidence of fraud was insufficient to support a finding of guilt. (Docket Entry No. 492, p. 17). This claim is conclusively refuted by the record, which shows that counsel moved for a judgment of acquittal on the basis of insufficient evidence of fraud at the close of the government's case, at the close of all evidence, and in a posttrial motion. (Docket Entry Nos. 186; 395, p. 119; 257). Trial counsel's performance cannot be deficient based on his alleged failure to take some action that he actually took. Stockman also has not shown prejudice because, as the Fifth Circuit concluded, the evidence that he defrauded donors was "overwhelming." *Stockman*, 947 F.3d at 263-64. Having failed to allege sufficient facts to show either deficient performance or prejudice, Stockman is not entitled to either a hearing or relief. *See Fields*, 565 F.3d at 298. This claim is denied.

**19. Failure to object to evidence of uncharged conduct (Ground 26)**

In claim 26, Stockman argues that trial counsel provided ineffective assistance by failing to object when the government presented evidence of "a five year sequence of events related to expenditures of 501(c)(3) or (4) entities when there were no charges for those actions." (Docket Entry No. 492, p. 17). He contends that this evidence misled the jury about the types of expenditures were legal for those types of entities. (*Id.*) But Stockman fails to identify the specific evidence to which counsel should have objected, fails to explain why the evidence was

objectionable, and fails to explain why or how the jury would have been misled by it. His conclusory and unsupported allegations of the failure to object to unspecified "misconduct" are insufficient to entitle Stockman to either a hearing or relief. *See Fields*, 565 F.3d at 298. This claim is denied.

### 20. Failure to understand the law (Ground 27)

In claim 27, Stockman asserts that trial counsel provided ineffective assistance by failing "to understand what the laws were for which their client was charged, resulting in incompetent defense." (Docket Entry No. 492, p. 17). He contends that counsel's "failure to object" and failure to "provide appropriate jury instructions" demonstrate that trial counsel did not understand the law applicable to the charges, which resulted in him being denied his right to a fair trial. (*Id.*).

On the claim that counsel did not understand the law, the voluminous record shows that counsel made numerous pretrial motions challenging the indictment and the admissibility of the government's evidence. The record also shows that counsel raised numerous objections during trial. It is clear from the substance and context of these motions and objections that counsel well understood the law applicable to the charges against Stockman. He has not pointed to any "independent indicia of the likely merit of [his] allegations" so as to be entitled to a hearing or relief. *Edwards*, 442 F.3d at 264,

On the claim that counsel failed to provide "appropriate jury instructions," Stockman has not identified any instruction he contends was improper. And even if he had, he cannot demonstrate prejudice because the Fifth Circuit determined that the jury instructions given to Stockman's jury were proper. *Stockman*, 947 F.3d at 264. Having failed to allege facts sufficient to show either deficient performance or prejudice, Stockman is not entitled to a hearing or relief. *See Reed*, 719 F.3d at 373-74. This claim is denied.

### 21. Failure to present law and evidence that expenditures were proper (Ground 28)

In claim 28, Stockman alleges that trial counsel provided ineffective assistance by failing to present evidence and law to show that the expenditures made with the donated funds were proper rather than fraudulent. (Docket Entry No. 492, p. 17). But he does not identify any evidence available to counsel that was not presented. Nor does he explain how that evidence would have counteracted the weight of the government's evidence that the donated funds were improperly diverted into his campaign accounts. Stockman has failed to direct the court to any "independent indicia of the likely merit of [his] allegations" so as to be entitled to a hearing or relief. *Edwards*, 442 F.3d at 264. This claim is denied.

### 22. Failure to explain the difference between "advocacy" and "express advocacy" and failure to object to the court's finding that "express advocacy had occurred (Grounds 29 & 33)

In two claims, Stockman alleges that trial counsel provided ineffective assistance pertaining to the issue of "express advocacy." "Express advocacy" generally encompasses campaign communications that urge the recipient to "vote for," "elect," "support," or "defeat" a particular candidate. *See McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 190 (2003), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010). It is distinguished from "issue advocacy," which attempts to persuade the recipient based on the issues a candidate supports. *Id.* At trial, Stockman took the position that he could not be found guilty on some of the counts against him unless the donated funds were used for "express advocacy." In ground 29, Stockman alleges that trial counsel provided ineffective assistance by failing to properly explain to the jurors the difference between "advocacy" and "express advocacy" and to explain when each is legally allowed or prohibited. (Docket Entry No. 492, p. 17). In ground 33,

Stockman alleges that trial counsel provided ineffective assistance by failing to object to the court's "finding" that "express advocacy existed." (*Id.* at 18).

But the record conclusively refutes Stockman's allegation of deficient performance. The record shows that counsel raised the distinction between "express advocacy" and "issue advocacy" numerous times, both before and during trial. (Docket Entry Nos. 92; 285, pp. 226-28; 395, pp. 50-54). Stockman cannot show deficient performance based on counsel's failure to raise an issue when the record shows that counsel actually raised it with the court.

Stockman also cannot show prejudice—either from counsel's arguments or the trial court's finding regarding express advocacy—because, as the Fifth Circuit held, a finding of "express advocacy" was not necessary to convict Stockman of any of the offenses with which he was charged. *Stockman*, 947 F.3d at 260-61. Having failed to allege facts sufficient to show either deficient performance or prejudice, Stockman is not entitled to a hearing or relief. *See Reed*, 719 F.3d at 373-74. This claim is denied.

### 23. Failure to preserve confrontation clause violations (Ground 31)

In claim 31, Stockman alleges that trial counsel provided ineffective assistance by failing to present and preserve a confrontation clause objection to statements from Rothschild's deceased assistant. (Docket Entry No. 492, p. 18). He alleges that the assistant, Jean Dellman, used letters that Rothschild wrote to form an opinion about his donative intent that conflicted with Rothschild's own statements and that the government improperly introduced Dellman's statements about Rothschild's intent when he was not available to be cross-examined. (*Id.*).

But the record shows that counsel did object to the admission of Dellman's testimony based on Rothschild's letters on both hearsay and confrontation clause grounds. (Docket Entry Nos. 155; 282, pp. 6-11). The trial court overruled the objections, finding that the statements were

nontestimonial. (Docket Entry No. 282, pp. 111-12). Stockman did not appeal this ruling to the Fifth Circuit. Because the record shows that trial counsel both raised and preserved the objection Stockman now contends should have been made, he cannot show deficient performance and is not entitled to a hearing or relief on this claim. *See Fields*, 565 F.3d at 298. This claim is denied.

### 24. Failure to object to evidence unrelated to Stockman (Ground 34)

In claim 34, Stockman alleges that trial counsel provided ineffective assistance by failing to object to the admission of evidence that people other than Stockman engaged in misconduct. (Docket Entry No. 492, p. 18). But Stockman has the burden to direct the court's attention to the specific evidence or testimony that he contends should not have been admitted, he has failed to do so, and the court is not required to "scour the record" for facts that might support his claim. See *Perez,* 1997 WL 464599, at *1. Having failed to carry his burden, Stockman is not entitled to a hearing or relief on this claim. *See Fields*, 565 F.3d at 298. This claim is denied.

### 25. Failure to object to irrelevant evidence (Ground 35)

In claim 35, Stockman alleges that trial counsel provided ineffective assistance by failing to object to evidence of a "scheme" that was not relevant except to show that Stockman was a "bad guy," thus prejudicing the jury against him. (Docket Entry No. 492, p. 19). But again, Stockman does not point to any specific evidence or testimony that he contends should not have been admitted, and the court is not required to "scour the record" for facts that might support his claim. See *Perez,* 1997 WL 464599, at *1. Stockman's conclusory and unsupported allegations do not entitle him to a hearing or relief on this claim. *See Fields*, 565 F.3d at 298. This claim is denied.

### 26. Failure to object to improper jury instructions (Ground 37)

In claim 37, Stockman alleges that trial counsel provided ineffective assistance by failing to object to improper jury instructions. (Docket Entry No. 492, p. 19). But Stockman does not identify any specific jury instruction to which he contends counsel should have objected, making this allegation conclusory and unsupported. In addition, the record contradicts the allegation because it shows that trial counsel did object to several of the proposed jury instructions and offer alternate language. (Docket Entry Nos. 286, pp. 59-62; 396, p. 3). Counsel's performance cannot be deficient for failing to object when counsel did, in fact, object.

Further, Stockman cannot demonstrate prejudice. He does not show that any of the jury instructions give were actually improper, nor can he given that the Fifth Circuit held that the instructions given at trial were proper. *See Stockman*, 947 F.3d at 259-62.

Absent legally sufficient allegations of either deficient performance or prejudice, Stockman is not entitled to a hearing or relief on this claim. *See Fields*, 565 F.3d at 298. This claim is denied.

### 27. Failure to properly respond to the jury's questions (Ground 38)

In claim 38, Stockman alleges that trial counsel provided ineffective assistance by failing to properly respond to the jury's questions. (Docket Entry No. 492, p. 19). He alleges that "when it became clear that the jury was confused, defense counsel had the perfect opportunity to clarify and correct the actual charges and evidence," but counsel failed to do so, which "result[ed] in the conviction." (*Id.*)

When a jury sends a question to the court during deliberations, that question must be answered in open court after defense counsel has been given an opportunity to be heard. *See Rogers v. United States*, 422 U.S. 35, 39 (1975); *United States v. Sylvester*, 143 F.3d 923, 928 (5th

Cir. 1998). Jury questions do not provide an opportunity for defense counsel to clarify or correct anything with the jury; the court responds to the questions after consultation with counsel.

Stockman does not allege any facts to show that counsel was not given an opportunity to be heard on the jury's question; he does not allege that counsel failed to offer a proposed response when given the opportunity; he fails to allege what response counsel should have proposed; he fails to identify any authority that would have supported his proposed response; and he fails to allege how the response actually given by the court was incorrect or prejudicial. In the absence of these allegations, Stockman has not shown either deficient performance or prejudice so as to be entitled to a hearing or relief. *See Fields*, 565 F.3d at 298. This claim is denied.

**28. Failure to try to preclude witnesses (Ground 39)**

In claim 39, Stockman alleges that trial counsel provided ineffective assistance by failing to try to exclude "witnesses that were simply there to make [Stockman] look like he was misusing charitable contributions for other matters." (Docket Entry No. 492, p. 19). He also alleges that trial counsel should have tried to preclude Dellman's testimony regarding Rothschild's state of mind. (*Id.*).

To the extent that Stockman raises this claim based on witnesses other than Dellman, it is conclusory. Stockman does not identify the witnesses counsel should have tried to exclude and does not provide any factual basis for concluding that the testimony from these unidentified witnesses was irrelevant to the charges against him. In the absence of such allegations, Stockman is not entitled to a hearing or relief on this claim. *See Fields*, 565 F.3d at 298.

To the extent that Stockman contends that trial counsel should have tried to exclude Dellman, the record shows that counsel did object to her testimony on both hearsay and confrontation clause grounds. (Docket Entry Nos. 155; 282, pp. 6-11). Stockman cannot show

that counsel's performance was deficient when counsel actually made the objection Stockman now alleges should have been made. Having failed to allege sufficient facts to demonstrate deficient performance, Stockman cannot show that counsel provided ineffective assistance, and he is not entitled to a hearing or relief. *See Fields*, 565 F.3d at 298. This claim is denied.

### 29. Promising the jury that Stockman would testify (Ground 45)

In claim 45, Stockman alleges that trial counsel provided ineffective assistance by promising the jury that Stockman would testify, which made it appear that Stockman was "hiding something" when he later chose not to testify. (Docket Entry No. 492, p. 20). Stockman points to nothing in the trial transcript showing that trial counsel ever promised the jury that Stockman would testify, and a review of the record does not show that counsel made such a promise. Having failed to produce, or even point to, 'independent indicia of the likely merit of [his] allegations," *Edwards*, 442 F.3d at 264, Stockman is not entitled to a hearing or relief on this claim, and it is denied.

### 30. Failure to "pursue remand" for prosecutorial misconduct (Ground 41)

In claim 41, Stockman alleges that appellate counsel was ineffective for failing to "pursue remand" based on improper arguments by the prosecutor and improper evidence before the grand jury. (Docket Entry No. 492, p. 19). A claim of ineffective assistance of appellate counsel is governed by the test set out in *Strickland*, which requires the defendant to establish both constitutionally deficient performance and actual prejudice. *See Smith v. Murray*, 477 U.S. 527, 535–36 (1986) (applying *Strickland* to a claim of ineffective assistance of counsel on appeal).

To establish that appellate counsel's performance was deficient, the defendant must show that "counsel was objectively unreasonable in failing to find arguable issues to appeal—that is,

that counsel unreasonably failed to discover non-frivolous issues" and raise them. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (internal citation omitted). A reasonable appellate attorney has an obligation to research the relevant facts and law and make informed decisions as to whether any identified issues will, or will not, prove fruitful. *See Strickland*, 466 U.S. at 690-91. But the Constitution does not require an appellate attorney to advance every conceivable argument, regardless of merit. *See Evitts v. Lucey*, 469 U.S. 387, 394 (1985).

To establish prejudice as a result of deficient performance, the defendant must show a "reasonable probability" that, but for counsel's deficient performance, "he would have prevailed on his appeal." *Robbins*, 528 U.S. at 285. In essence, the defendant must show that appellate counsel's "deficient performance led to a fundamentally unfair and unreliable result." *United States v. Dovalina*, 262 F.3d 472, 475 (5th Cir. 2001) (citing *Goodwin v. Johnson*, 132 F.3d 162, 176 (5th Cir. 1997)).

Stockman alleges that appellate counsel provided ineffective assistance by failing to raise prosecutorial misconduct and improper grand jury evidence as issues on direct appeal. But Stockman does not identify any instance of prosecutorial misconduct, and he does not identify any evidence that was improperly before the grand jury. In the absence of some "independent indicia" that such evidence exists, Stockman cannot show that either issue would have had merit on appeal. And appellate counsel does not provide ineffective assistance by failing to raise meritless arguments. *See Murray*, 477 U.S. at 536 ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)); *see also Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir. 2004) (noting that appellate counsel

need not raise every nonfrivolous ground available and may make "an informed decision that certain avenues will not prove fruitful").

Because Stockman's allegations do not show that appellate counsel failed to raise a potentially meritorious issue on appeal, his conclusory allegations of deficient performance are insufficient to warrant either a hearing or relief. This claim is denied.

## IV. Conclusion

Stockman's § 2255 motion is denied and his civil action dismissed with prejudice. The record conclusively demonstrates that no relief is appropriate, and no evidentiary hearing is needed. *See United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983) (no hearing is necessary when a motion is devoid of factual or legal merit). Because reasonable jurists could not disagree with the denial of the § 2255 motion, no certificate of appealability is issued. *See United States v. Bernard*, 762 F.3d 467, 483 (5th Cir. 2014).

SIGNED on December 30, 2021, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge